**In re AIR NATIONAL AIRCRAFT
SALES AND SERVICE,
INC., Debtor.**

**Bankruptcy No. 185–50219–260.**

United States Bankruptcy Court,
E.D. New York.

Sept. 23, 1985.

Gary Ginsburg, Teitelbaum & Gamberg, P.C., New York City, for Salenia.

Abner T. Zelman, Breed, Abbott & Morgan, New York City, for United Aviation Co., Inc.

Patrick J. Monaghan, Jr., New York City, for debtor.

## DECISION

CONRAD B. DUBERSTEIN, Chief Judge.

These proceedings, spawned by a bankruptcy case fraught with a multitude of complicated problems involving the debtor, both before and after it filed its petition for relief under Chapter 11, is typical of those where the bankruptcy court is required to engage in a full examination and analysis of the debtor's affairs in the course of its decision. As will be seen as the saga of its problems enfolds, the debtor, which is engaged in the business of operating aircraft for charter tours, has been in courts in almost as many cities in this country in which it may have landed its planes in the relatively short period of its existence. When it finally found that the bankruptcy court here is where it should have gone to in the first place, its corporate existence was in such a precarious condition that it was required to seek, on very short notice, emergency relief which is the subject of this decision.

The principal relief sought by the debtor was the enforcement of the benefits of the automatic stay provisions of the bankruptcy law so as to enjoin and prevent the interference and the use by it of its major asset, a leased aircraft, to enable it to effect a reorganization of its affairs. Because the circumstances surrounding the application for relief required this court to provide for an expedited hearing, it proceeded without delay, heard all of the parties, made findings and conclusions upon the completion of the argument, and rendered an oral decision which denied the debtor's application. This court's findings and conclusions of law as well as its bench decision is contained in the transcript of the hearing on the application. However, inasmuch as this court has been informed that the debtor has appealed the decision, this written opinion is rendered to provide any appellate reviewing tribunal with the essential facts so as to enable it to conclude whether or not the facts as found by this court and its conclusions of law were properly applied in the determination of the issues involved.

### The Application Before This Court

This is a motion brought by way of an order to show cause by Air National Aircraft Sales and Service, Inc. (the "debtor") for an order pursuant to § 105 and § 362 of the Bankruptcy Code staying the continuation of proceedings by Salenia A.B. of Norlands Gaton, Stockholm, Sweden (the "lessor") against the debtor in an action brought by the lessor in the Circuit Court of Platte County of the State of Missouri. The action arose out of a lease of a certain aircraft from the lessor to the debtor as lessee. The motion further seeks to stay the implementation of an order of that court which declared that the debtor has no interest under the lease, declaring that the order is void and in violation of the automatic stay provisions of § 362 of the Bankruptcy Code, directing the lessor post a bond in the sum of $1,000,000, permitting the debtor to assume the lease, and holding the lessor in contempt for violation of the § 362 automatic stay. As appears at the outset of this opinion, the motion was orally denied. This written opinion reaffirms that decision.

### Background

This bankruptcy case, which gave rise to the application before this court was originally commenced in the United States

Bankruptcy Court, Western District of Texas, San Antonio Division, when the debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code there on September 12, 1984. The case was transferred to Honorable Bert W. Thompson, United States Bankruptcy Judge. As will be seen later in the course of this opinion after considering various matters relating to the debtor, Judge Thompson entered an order on January 8, 1985 transferring the venue of the case from the Western District of Texas to the Southern District of New York. The transfer to that court was apparently based on a misapprehension by counsel that the debtor's premises at Kennedy Airport were located in the Southern District of New York, when in fact they were located in the Eastern District of New York. The case was then transferred here to the Eastern District of New York where it is presently pending. Inasmuch as this court received from the Bankruptcy Court in Texas its entire file relating to this case as well as documents with respect to litigation and transactions between the debtor and the lessor, all of which were reviewed in the course of making its findings of fact which gave rise to its conclusions of law, this court provides the following background which it considered in its determination that the requested relief should not be granted and which resulted in the denial of the debtor's application.

Prior to the commencement of its bankruptcy case which arose from the filing of its petition for relief under Chapter 11 filed in Texas, which was ultimately transferred to this court as appears above, the debtor was a charter airline operating a Boeing 747 aircraft bearing Luxembourg registration, under a Certificate of Convenience and Necessity issued by the Civil Aeronautics Board. The aircraft, which is the subject of the debtor's application, was leased by the debtor from the lessor pursuant to a formal written Aircraft Lease Agreement and Addendum dated May 22, 1984. Following a dispute between the debtor and the lessor, the latter commenced a series of proceedings long before the bankruptcy to recover the aircraft. The initial proceeding which was in the state court in Florida, was dismissed for lack of personal jurisdiction. Thereafter, and again prior to the institution of the bankruptcy case, the lessor commenced an action in the United States District Court for the Western District of Missouri, to recover the aircraft. On July 19, 1984, the lessor moved in that action for a Declaratory Judgment and Writ of Prejudgment Attachment. However, before the court could move on the motion, the action was removed to the Circuit Court of Platte County of the State of Missouri, where it was referred to Honorable John M. Yeaman, a Judge of that court. The lessor then moved for a Declaratory Judgment and a Writ of Prejudgment Attachment in that action. On July 26, 1984, Judge Yeaman entered a Prejudgment Order attaching the aircraft.

On July 31, 1984, Judge Yeaman denied the debtor's motion to dissolve the Writ of Attachment after a hearing at which the parties were represented by counsel and evidence was presented. He ordered that the debtor could regain possession of the aircraft if it complied with the terms of the Lease Agreements, as well as with additional requirements which he imposed. These included the payment of monies due to Trans World Airlines ("TWA") for services rendered the lessee, the prevention of lapses of insurance on the aircraft, the deposit with his court of $500,000 as security, and the payment of the monthly rental arising under the Lease in the sum of $306,666.60 on or before August 1, 1984.

On August 2, 1984 Judge Yeaman found that the debtor had failed to comply with his aforesaid order of July 31, 1984. Consequently, on August 3, 1984, he signed an order granting the lessor "unfettered use and possession of the … aircraft" upon its compliance with the following conditions:

a) satisfaction of TWA's outstanding claim of $255,000; and

b) posting of a $1,000,000 surety bond.

On August 8, 1984, the lessor entered into an agreement with TWA discharging a

mechanic's lien in its favor in an amount in excess of $255,000 in satisfaction of its claim against the aircraft. On that date, the lessor also filed the $1,000,000 surety bond with the Clerk of the Court in accordance with Judge Yeaman's order of August 3, 1984, the same to be forfeited to the debtor if the repossession proved wrongful. Subsequent to August 8, 1984, and in compliance with Judge Yeaman's order of August 3, 1984, the lessor took possession of the aircraft at the Kansas City International Airport and flew it to Luxembourg. The action in the Circuit Court of Platte County remained on the Court's calendar for the purpose of determining the ultimate rights and liabilities of the parties.

Following the lessor's seizure of the aircraft, the debtor was unable to meet its contractual obligations to its passengers or obtain a substitute aircraft. As a result, and at long last on September 12, 1984, it filed its petition for relief under Chapter 11 of the Bankruptcy Code in the Western District of Texas, as has already been noted. The basis for venue there was the debtor's expressed intention to move its principal place of business to that District, coupled with the convenience of the parties and witnesses and in the interest of justice. As has further been noted, the case was referred to Bankruptcy Judge Thompson.

On October 31, 1984, the debtor made a "Motion for Approval of Assumption of Executory Contract" before Judge Thompson in the bankruptcy court, wherein it sought to assume the lease affecting the aircraft. In its moving papers, it also requested that the lessor forfeit the $1,000,-000 bond posted in the state court action in accordance with Judge Yeaman's order of August 3, 1984. The motion makes reference to § 365 of the Bankruptcy Code.[1] Among other things, it stated that the lessor had interfered with the debtor's "quiet use and enjoyment of the aircraft" by telexing to it "Notices of Default and De-

mands for Possession of the aircraft on June 2, 15, and 19, 1984." (Para. VII at p.p. 3–4 of the debtor's application in support of the motion). It also stated that the debtor was ready, willing and able to cure any pecuniary loss occasioned by its withholding of certain engine deposits, on condition that the lessor make the aircraft available to the debtor for the remaining lease term of twelve (12) months, as well as provide an engine replacement in accordance with the lease agreement.

The debtor's application in support of its motion to assume the lease made no mention of Judge Yeaman's order of July 31, 1984 in which he conditioned the return of the aircraft to the debtor upon its compliance with the lease and certain enumerated conditions as set forth above. Although the motion papers referred to Judge Yeaman's order of August 3, 1984 which granted the lessor unfettered possession and use of the aircraft, they failed to indicate that the order was entered as a result of the debtor's inability to comply with Judge Yeaman's order of July 31, 1984.

The hearing on the debtor's motion to assume the contract was scheduled for November 21, 1984 in the bankruptcy court. The lessor moved for Bankruptcy Judge Thompson to abstain or dismiss the debtor's motion. At that hearing, Judge Thompson did not pass on the motion but questioned the propriety of venue inasmuch as the debtor had neither assets nor a place of business in Texas. He ruled that venue in the Western District of Texas was improper and directed the debtor to transfer the bankruptcy case to a court with proper venue within 30 days.

The debtor failed to move to transfer venue within the 30 day period. Instead, on December 6, 1984, it filed a complaint in Judge Thompson's court entitled "Complaint of Debtor in Possession to Enforce Automatic Stay." The debtor contended

---

**1.** Although a motion to assume an executory contract is governed by § 365 of the Bankruptcy Code which provides the conditions for such assumption, the debtor urges, as hereinafter appears, that its motion to assume the lease was

intended as a step in the direction of complying with the provisions of § 1110 of the Code which is discussed at length later in this opinion. *See infra* note 2.

the complaint was filed because it was notified that the lessor was attempting to sell the aircraft. On the same day, December 6, 1984, Judge Thompson signed an ex parte order enforcing the automatic stay without notice and a hearing. The order stated that the automatic stay should not be lifted, relaxed or modified in any way. The order further provided that the lessor's attempt to proceed with any sale or other disposition of the aircraft or to continue any state court action against the debtor be stayed and enjoined, subject to the further order of the court.

Thereafter, the lessor moved before Judge Thompson to vacate his order of December 6, 1984. In a memorandum in support of that motion the lessor stated that notice of default and termination of the lease was given to the debtor prior to the lessor's repossession of the aircraft. The lessor also noted that the pertinent provision in the Bankruptcy Code which governs the rights of parties to an aircraft lease, and is an exception to the automatic stay triggered by § 362 of the Code, is found in § 1110 with which the debtor failed to comply.[2] Consequently, there was no stay in effect.

On January 2, 1985, Judge Thompson signed an order, entered January 3, 1985, vacating his order of December 6, 1984. Said order of January 2, 1985 states as follows:

"[I]t appearing to the Court that said thirty (30) day period has now expired without the Debtor having brought on for hearing a Motion to Transfer Venue or caused to be entered thereon, and that since this Court does not have venue of this case, it is unjust and inequitable to

continue the Order next hereinafter referred to in effect, it is accordingly ORDERED that the Order of this Court dated December 6, 1984, and entered December 7, 1984, and denominated 'Order Enforcing Automatic Stay' shall be and the same is hereby vacated and set aside."

The debtor appealed Judge Thompson's order of January 2, 1985 to the District Court for the Western District of Texas. It is to be noted that on several occasions that order is referred to as the order of January 3, 1985, the date it was entered by the Clerk of the Bankruptcy Court. While the appeal was pending, and on January 8, 1985 Judge Thompson entered the order transferring the case from the Western District of Missouri to the Southern District of New York. On January 11, 1985, Honorable Edward C. Prado, a Judge of the District Court for the Western District of Texas, before whom the debtor moved for a stay pending appeal, signed an order which provided that the "Debtor's Motion for Stay Pending Appeal is in all things DENIED."

Subsequent to Judge Prado's decision the lessor, apparently recognizing that the stay was no longer in effect, proceeded before Judge Yeaman in the state court action which was still pending in the Missouri state court. An examination of the documents and papers on file with this court indicates that both the lessor and debtor were represented by counsel, and that during the course of the trial, evidence was heard and the pleadings were examined. The documents further reveal that on February 12, 1985, Judge Yeaman entered an order wherein he made findings setting

**2.** Section 1110 provides in pertinent part:

(a) The right of a ... lessor ... of ... aircraft, ... as defined in section 101 of the Federal Aviation Act of 1958 (49 U.S.C. 1301) ... leased to ... a debtor that is an air carrier operating under a certificate of convenience and necessity issued by the Civil Aeronautics Board, ... to take possession of such equipment in compliance with the provisions of a ... lease, ... is not affected by section 362 or 363 of this title or by any power of the court to enjoin such taking of possession, unless—

(1) before 60 days after the date of the order for relief under this chapter, the trustee [debtor in possession] subject to the court's approval, agrees to perform all obligations of the debtor that become due on or after such date under such ... lease ... and

(2) any default, other than a default of a kind specified in section 365(b)(2) of this title ...

(A) that occurred before such date is cured before the expiration of such 60-day period ...

forth that the lease between the debtor and the lessor had terminated on July 2, 1984 due to the debtor's material breach and default, and that all rights and interests of the debtor in the aircraft were terminated effective July 2, 1984. The order further directed that the $1,000,000 bond which had been posted by the lessor be dissolved and released to the lessor, who was also awarded damages amounting to $859,893, as a result of the debtor's material breach.

Thereafter, the debtor brought the present motion in this court. It contends that the lessor's state court action which it continued subsequent to the commencement of this bankruptcy case on September 12, 1984, and Judge Yeaman's order of February 12, 1985 which found that the lease and the debtor's interest in the aircraft were terminated effective July 2, 1984, as well as the provision contained therein for the release of the $1,000,000 bond and the damages awarded to the lessor, were all in violation of the automatic stay provisions of § 362.

The lessor, on the other hand, points to the order of Judge Yeaman entered on August 3, 1984 before any stay was in effect and which gave it unfettered possession of the aircraft. In addition, the lessor contends that the orders of Judge Thompson and Judge Prado removed any stay of the continuation of its action in Missouri wherein on February 12, 1985 Judge Yeaman affirmed the lessor's right to possession of the aircraft, finding that the lease was terminated as far back as July 2, 1984 and fixing damages in favor of the lessor arising out of the breach of the lease. Thus, the lessor argues that as of the date of the filing of the petition, the debtor had no interest in the lease to protect nor to assume. Finally, the lessor contends that notwithstanding the provisions of the state court orders which gave the lessor unfettered possession of the aircraft and found that the lease had been terminated prior to the filing of the petition, the debtor's failure to comply with § 1110 deprived it of any rights to the aircraft.

The debtor argues that it was not required to comply with § 1110 inasmuch as the lessor was already in possession of the aircraft at the time the petition in bankruptcy was filed. It finally contends that even if this court were to decide that it should have complied with § 1110, its motion to assume the lease should be deemed to constitute compliance with that Section.

## DISCUSSION

It would appear from the facts set forth above that on September 12, 1984 when it filed its petition in bankruptcy, the debtor had no leasehold interest in the aircraft. Nevertheless, and notwithstanding those facts, the debtor argues that the determination by the state court on February 12, 1985 that there was no lease in effect was made at a time when the automatic stay provisions of § 362 were in effect and that such findings and conclusions violated that Section.

The debtor further claims that when Judge Thompson signed his order of January 2, 1985 which vacated his previous order of December 6, 1984 denominated "Order Enforcing Automatic Stay", the effect of the vacatur order in nowise negated the general inherent stay provisions of § 362. Thus, it argues that neither of Judge Thompson's orders affected in anywise the provisions of § 362 which automatically provided for a stay upon the filing of the petition in bankruptcy, without the need of any order. It further claims that District Judge Prado's order which denied the stay, could not have been intended to affect the § 362 stay. It therefor reasons that since the § 362 stay was in effect when the lessor proceeded before Judge Yeaman, his order of February 12, 1985 was invalid when it reiterated his pre-petition finding that the lease was terminated and the debtor's interest in it was extinguished. It is to be noted that Judge Yeaman's decision of February 12, 1985 was entered ten (10) days before the debtor moved before this court on February 22, 1985 for the relief which it sought, in total disregard of the state court's findings, conclusions and or-

ders entered both before and after its petition in bankruptcy was filed.

## ISSUES

Was the lease between the parties in effect as of the date of the filing of the petition in bankruptcy?

If the lease was in effect, did § 362 or § 1110 govern the rights of the parties?

If § 1110 was controlling, did the debtor's motion to assume the lease satisfy the requirements of § 1110?

If § 1110 was controlling, did the debtor comply with its provisions?

If § 362 was controlling, did the lessor violate its provisions?

## CONCLUSION

■ A considerable amount of time and space has been devoted in this opinion to the status of the lease between the parties and the effect of the stay provisions of § 362 and § 1110 relating to the rights and remedies of the parties arising out of the lease. Having examined into the facts developed during the course of their dealings, both in the state court of Missouri as well as in the federal courts both here and in Texas, this court concludes that the lease had terminated prior to the filing of the petition in bankruptcy. Consequently, there was no stay under § 362 which enjoined the lessor from pursuing its rights to the aircraft.[3]

■ Assuming arguendo that the state court orders entered prior to the filing of the petition in bankruptcy did not extinguish the debtor's leasehold interest, it is this court's further conclusion that the debtor's failure to comply with § 1110 enabled the lessor to proceed in the state court which resulted in Judge Yeaman's decision there of February 12, 1985.

3. We observe that the § 362 stay remains in effect only until property is no longer property of the estate. Section 362(c) provides in pertinent part:

the stay of an act against property of the estate ... continues until such property is no longer property of the estate....

Section 1110 is intended to preserve the protection and the right given lessors of aircraft leased to a debtor that is an air carrier operating under a certificate of convenience and necessity issued by the Civil Aeronautics Board, to take possession of the aircraft in compliance with the provisions of its lease.[4] Under § 1110 the debtor in possession is given sixty (60) days after the order for relief in a case under Chapter 11, to have an opportunity to comply with its provisions. The Section is intended to override the automatic stay provisions of § 362 as appears from § 1110(a) which provides, among other things, that the right of a lessor

"is not affected by § 362 or § 363 of this title or by any power of the court to enjoin such taking of possession, unless—

(1) before sixty days after the date of the order for relief ... the trustee [debtor in possession], subject to the court's approval, agrees to perform all obligations of the debtor that become due on or after such date under such ... lease, ... and—

(2) any default ... under such ... lease ...

(A) that occurred before such date is cured before the expiration of such 60-day period...."

Subdivision (b) of § 1110 further provides that the lessor may agree, subject to the court's approval, to extend the 60-day period specified above.

In the case before this court, the debtor neither took the appropriate steps required of it by § 1110, nor did the lessor consent to an extension of the 60-day period.

As noted in the legislative history relevant to § 1110:

"It is a well-settled principle of bankruptcy law that once a lease is terminated, there is nothing for a debtor in possession to assume." *In re Crabb,* 48 B.R. 165, 167 (Bkrtcy.D.Mass. 1985).

4. *See supra* note 2 for the pertinent provisions of § 1110.

"[U]nder section 1110(a) a debtor in possession or trustee is given 60 days after the order for relief in a case under chapter 11, to have an opportunity to comply with the provisions of sections 1110(a). During this time the automatic stay will apply and may not be lifted prior to the expiration of the 60-day period. Under section 1110(b), the debtor and secured party or lessors are given an opportunity to extend the 60-day period, but no right to reduce the period is intended."

[124 Cong.Rec.H 11,102 (Sept. 28, 1978); S 17,419 (Oct. 6, 1978)]

If we were to assume, as the debtor contends and suggests, that the lease was in existence at the time it filed its petition in bankruptcy on September 12, 1984, and that its motion to assume the lease which was brought on for hearing on November 21, 1984 was equivalent to a motion pursuant to § 1110, it is clear that the debtor failed to comply with that Section. It had not agreed to perform all obligations under the lease and to cure all defaults in the 60-day period following the bankruptcy filing on September 12, 1984, nor had it received the necessary court approval within that time to perform its obligations under the lease, all as required by § 1110. Rather, it ignored the state court orders of July 31 and August 3, 1984 and by filing its petition in bankruptcy attempted to assume the lease. Only where the debtor complies with the requirements of § 1110 is it entitled to retain the aircraft and then to move to assume the lease under § 365 of the Code.[5]

In view of the fact that the debtor failed to comply with § 1110 during the 60-day period following the petition in bankruptcy, the stay embodied in that Section was dissolved. Under those circumstances, the lessor was free to pursue its remedies and seek to take such steps as it was entitled to under the lease, if there was a lease in effect, including continuation of the action in the Missouri state court.

▪ The debtor argues that § 1110 is not applicable because the lessor had possession of the aircraft prior to the bankruptcy filing. Based on our own reading of the legislative history and statutory scheme of § 1110, we find that § 1110 was applicable, whether or not the lessor had possession of the aircraft. Collier supports this position in its treatise in its discussion of a situation related to the instant case. It states:

Section 1110 does not address explicitly the issue of whether an equipment lessor, ... having obtained possession of its equipment, must request relief from the bankruptcy court in order to foreclose its lien. The clear Congressional intent is to permit foreclosure without delay if the trustee or debtor decides not to perform all of the debtor's obligations under the ... lease ... If a court were to deny a request for relief in the face of the unwillingness of the trustee or debtor to agree to perform under section

---

**5.** *See supra* note 1.

The case law and legislative history have both recognized that while § 1110 and § 365 are similar, a motion to assume an executory contract is conditioned first upon the debtor's compliance with § 1110 where such compliance is required. In *In re Airlift International, Inc.*, 761 F.2d 1503 (11th Cir.1985), the Eleventh Circuit recently explained this as follows:

"While the section 1110 stipulation in this case bears resemblance to a section 365 assumption of an executory contract, the legislative history of section 1110 counsels that they are not identical:

It should ... be noted that under section 1110(a) the trustee or debtor in possession is not required to assume the executory contract or unexpired lease under section 1110; rather, if the trustee or debtor in possession complies with the requirement of section 1110(a), the trustee or debtor in possession is entitled to retain the aircraft or vessels subject to the normal requirements of section 365.
124 Cong.Rec. H11102–03 (daily ed. Sept. 28, 1978).
Therefore, while the debtor upon entering into a section 1110 stipulation does not assume and is not ultimately liable for performance of the entire contract, it is clear that where the debtor agrees to pay each installment coming due under the note he is subject to the normal requirements of section 365."
*Id.* at 1508.

1110(a)(1), such denial of relief would constitute a clear abuse of discretion. 5 *Collier on Bankruptcy*, Para. 1110.01 at 1110–25 (15 ed. 1985).

■ The lessor's right to possession is not denied it by virtue of the filing of the petition in bankruptcy. Section 1110 merely postpones its right to take possession and enjoins it from interfering with the debtor's use of the equipment on condition that the debtor do what is required of it by the Section. If the debtor fails to do so, the lessor is not stayed from taking possession. It follows that where a lessor does take possession prior to the filing of the petition in bankruptcy under circumstances where the debtor might still have rights under the lease, the debtor is entitled to the return of the equipment provided it complies with § 1110. In the event it fails to do so, the lessor is entitled to possession unqualifiedly. Thus, it is clear that if the debtor is desirous of preserving its rights under the lease of the equipment and seeks to prevent the lessor from obtaining possession or, as in the instant case from maintaining and continuing possession, the debtor is required to comply with § 1110.

■ We finally come to the debtor's ultimate contention that the lessor violated § 362. This argument is bottomed on the premise that neither of the orders of Judge Thompson or the order of Judge Prado validly affected the inherent injunctive role of § 362. Consequently, it further argues that § 362 continued unaffected and unabated by those orders and that the lessor's subsequent conduct and activity in the state court was contumacious and that Judge Yeaman's findings and conclusions that the lease had terminated on July 2, 1984 and that the debtor had the right to possession on August 3, 1984 were void and of no effect. The trouble with the debtor's argument is that again it ignores the fact that in light of the special relationship between it as lessee of the type of aircraft covered by § 1110 and the lessor, that Section of the law, not § 362, governs the rights and obligations of the parties.

And because it did there is no violation of § 362. It is to be noted the lessor was especially careful in not taking any steps to proceed with the state court action in violation of any stay until the order was entered not only by Bankruptcy Judge Thompson, but by District Judge Prado, which vacated the stay. This court observes that when the lessor did then proceed in the state court, the debtor did nothing to prevent the lessor from pursuing its claim in the state court after the rendition of Judge Prado's order and that it participated in those subsequent proceedings in the state court which gave rise to Judge Yeaman's findings and conclusions of February 12, 1985. The relief which it sought in this court, coming long after the orders of the state court entered prior to the filing of the petition in bankruptcy, as well as the proceedings which the lessor continued before Judge Yeaman subsequent thereto, are but an effort on the part of the debtor to avoid the consequences of its failure to perform the terms of the lease and meet the conditions laid down by the state court which gave it the right to revive the lease and enforce its rights and which it failed to meet. If this court were to embrace the debtor's contention that the state court orders entered after the petition in bankruptcy was filed violated the automatic stay provisions of § 362 and therefore were ineffective to have the lease deemed terminated, the lease would have been deemed in effect when the petition in bankruptcy was filed. In that event, the debtor's failure to comply with § 1110 was fatal to it as has been underscored in this opinion.

In light of all of the foregoing, the bench decision of this court rendered on February 22, 1985 is hereby reaffirmed.

### ADDENDUM TO DECISION

After the foregoing decision was prepared in typewritten form, this court received from the attorneys for the debtor a letter dated August 30, 1985 wherein it stated that this court

"denied Air National's motion primarily relying on the interpretation of a somewhat ambiguous order issued by United States District Judge Prado in the Western District of Texas. It appears (although Your Honor has not yet rendered a written opinion on this motion) that that interpretation was that Judge Prado had granted Salenia relief from the automatic stay under § 362 of the Bankruptcy Code. Enclosed for Your Honor's review is an order dated August 7, 1985 from Judge Prado which attempts to clarify his prior order."

Although this court knows of no procedural basis for Judge Prado to have entered an order in his court on August 7, 1985 where and when there is nothing pending before him (we are informed that the appeal to him from Judge Thompson's order which vacated the stay, was never perfected,) we feel constrained to comment on the observations contained in the letter, as well as the orders of Judge Prado.

As is noted in the opinion above, on January 11, 1985 Judge Prado entered an order in the appeal before him which denied the debtor's motion for a stay pending the appeal. As further appears from this opinion, the appeal referred to was the appeal taken from Judge Thompson's order of January 2, 1985 which vacated his order of December 6, 1984 enforcing the stay. An examination of the debtor's application for leave to appeal reveals that the relief sought was the reinstitution of the stay. No mention of § 1110 was made in the application. However, the motion papers submitted by the lessor to Judge Thompson in support of the motion to vacate his December 6, 1984 order and to vacate the stay imposed by it as well as the debtor's response to that motion which undoubtedly were noted by Judge Prado when he denied the stay, contained references by both parties to the provisions of § 1110. That may account for the fact that when Judge Prado signed his order of January 11, 1985, which denied the motion for a stay pending appeal, the order in its entirety reads as follows:

"The Court is of the opinion that it has no authority to grant a stay of an interlocutory appeal of an order to lift a stay pursuant to § 1110 of the Bankruptcy Code where such appeal has not been certified by the bankruptcy court judge. IT IS THEREFORE ORDERED that Debtor's Motion for Stay Pending Appeal is in all things DENIED."

On August 7, 1985 Judge Prado signed the order referred to in the August 30, 1985 letter of counsel for the debtor. A copy of that order which counsel provided this court, reads as follows:

"The Court in reviewing its order of January 11, 1985, entered in the above cause, notes that it denied appellant's motion for a stay pursuant to Section 1110 of the Bankruptcy code. The Court, in denying the motion did so because the code specifically intends this section to be utilized in post-judgment rather than interlocutory appeals. Therefore, the Court ruling does not address the matter of a stay pursuant to any other section of the code."

It is this court's opinion that Judge Prado's "clarifying order" of August 7, 1985 may have been intended to indicate that his order of January 11, 1985 was aimed at continuing the lifting of the stay as a § 1110 stay, but that the injunctive provisions of § 362 were deemed to have continued. Thus, the order of August 7, 1985 apparently appears to be of significance to the debtor. Presumably, it could now argue that when the lessor proceeded with the state court action after Judge Prado had entered his order of January 11, 1985, the stay provided by § 362 was still in effect and the lessor had violated its provisions. Consequently, it could further argue that all of the matters taken up by the state court subsequent to January 11, 1985, particularly the findings and conclusions of Judge Yeaman dated February 12, 1985, were void as having been in violation of § 362.

320

On the basis of the conclusions of this court contained in its foregoing decision, it cannot accept the debtor's argument nor does it believe that Judge Prado's "clarifying order" of August 7, 1985 in anywise justifies a change in the decision. At the risk of being repetitive, but because this court finds it necessary to respond to the comments of counsel for the debtor arising out of Judge Prado's "clarifying order", this court has found that at the time of the filing of the petition in bankruptcy, the lease had terminated and there was no stay in place affecting the rights of the lessor to pursue its remedies. Furthermore, if as the debtor strongly contends, the § 362 stay was still in place, notwithstanding the vacatur order of Judge Thompson and the January 11, 1985 order of Judge Prado, the debtor's acts and conduct in participating in the state court action subsequent to such orders, rendered the stay under § 362 ineffective as against the lessor.[6]

In final conclusion, if by any stroke of legal legerdemain it were determined that the conclusions and orders of the state court were not binding on the parties and were ineffective to adjudicate their rights to the extent that the lease was terminated and unfettered possession was given to the lessor prior to the filing of the petition in bankruptcy, the lease would have been deemed to have been in existence at the time the petition in bankruptcy was filed. If that were the case, by failing to conform to the requirements of § 1110, the debtor would have lost any right to prevent the lessor from pursuing its remedies under the terms of the lease. Once the stay under § 1110 had lapsed under those circumstances, there would have been no "stay pursuant to any other section of the Code" as referred to by Judge Prado in his August 7, 1985 order.

Under the circumstances, the conclusion reached by this court's bench decision, as well as is contained in this decision, is not affected by Judge Prado's latter order.

6. *See In re Lawler,* 50 B.R. 110 (Bkrtcy.N.D.Tex. 1985).