**Larry WILLIAMS, Plaintiff,**

v.

**BOARD OF REGENTS OF the UNIVERSITY SYSTEM OF GEORGIA et al., Defendants.**

**Civ. A. No. 76–32–ATH.**

United States District Court, M. D. Georgia, Athens Division.

April 29, 1981.

J. Hue Henry, Athens, Ga., for plaintiff.

Alfred L. Evans, Jr., Sr. Asst. Atty. Gen., Atlanta, Ga., for defendants.

## ORDER

OWENS, Chief Judge.

This constitutes the court's ruling on defendants' motion to alter or amend the judgment of this court entered December 7, 1976. The procedural history of this protracted litigation is set forth in the court's order of February 6, 1981, denying defendants' motion for a stay of the execution of judgment. On February 17, 1981, at 11:00

a. m. in the United States District Court, Macon, Georgia, the court heard from opposing counsel on the motion for relief from judgment. The defendants contended that relief from judgment was proper in that plaintiff's actions surrounding his dismissal from the University of Georgia Police Force constituted a fraud upon the court. Specifically, the defendants argue that the plaintiff engaged in a conscious course of conduct via selected political decisions which effectively resulted in plaintiff bringing about his own dismissal.

The defendants' version of the allegedly fraudulent conduct reveals that an accident occurred between defendant Saye and a student; that a report came in and plaintiff was either at the radio or was called by the operator and advised of the accident. Following the filing of the report, but prior to the alteration of the accident report by defendants, plaintiff met with his political campaign committee, whereupon it was decided that the disclosure of the accident report to the press would successfully propel his campaign forward. Defendants strongly suggest that his conduct from that point forward was causally related to his firing; the defendants contend then, that plaintiff caused his own firing. Further, defendants suggest that even if plaintiff did not cause his own dismissal, that plaintiff perjured himself on the question of damages. Specifically, they contend the following statements to be perjurious:

Trial, pp. 62–63 (Williams—direct):

"Q. Did you consider that this [publicity] was having any impact on your campaign, this publicity?

"A. (Larry Williams) Yes, naturally it just stopped it. It just grounded to a halt. We were out trying to qualify, we just stopped that activity.

"Q. Trying to qualify by getting petitions signed?

"A. That's correct.

"Q. Were your campaign workers willing to continue as long as this cloud was over the campaign?

"A. They were all pretty upset about it, pretty depressed and we all pretty much stopped."

Hearing on Injunctive Relief, pp. 44–45 (Williams—cross):

"A. (Larry Williams) I gave the copy [original report] that I had made that night and the copy [altered report] that I had received from Mrs. Cindy Bray to him [father] for his appraisal.

\* \* \* \* \* \*

"Q. Was it your intention at the time that you gave these [reports] to your father that they be turned over to someone other than your father?

"A. No, not exactly. There was really no intent. At this point I was simply asking for advice. I really was unsure of the proper avenue to take, and I was asking my father's advice."

Trial, pp. 54 (Williams—direct):

"Q. When you gave these reports to your father, Larry, did your father tell you he was going to give them to a newspaper reporter?

"A. No sir, he did not.

"Q. Did you have any knowledge that your father intended to give these [reports] to this news reporter?

"A. (Larry Williams) No, I did not."

Trial, p. 135 (Dr. Williams—direct):

"Q. Did Larry know before you gave the document [reports] to Mr. McCommons [newspaper reporter] that you were going to do it?

"A. [Father] No.

"Q. That was your decision?

"A. Yes."

Defendants would prove the perjurious nature of the above statements by showing that the campaign committee had met prior to the turning over of the police reports, and had then mapped out a course of conduct wherein the plaintiff would cause the reports to be leaked to the press, and, in particular, to a specific newspaper reporter. All of this operates, to defendants' way of thinking, as a fraud upon the court; a new trial would, therefore, be necessitated.

■ The concept of fraud upon the court stems from the savings provision of Federal Rules of Civil Procedure 60(b) which provides in pertinent part: "This rule does not limit the power of a court . . . to set aside a judgment for fraud upon the court." Unlike a motion under 60(b)(3), which allows a court to grant relief to a party where an act of fraud (either intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party has been committed, a motion for fraud upon the court is not bound by a one-year limitation for filing. Given the absence of a rigid time limitation, and the deep-rooted federal policy of preserving the finality of judgments, fraud upon the court cannot necessarily be read to embrace any conduct of which the court disapproves. Rather, fraud upon the court should "embrace only that species of fraud which does or attempts to defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." 7 Moore, Federal Practice, ¶ 60.33, at 515. *See, Kerwit Med. Products v. N. & H. Instruments*, 616 F.2d 833 (5th Cir. 1980). Fraud which attempts to defile the court has been construed to include only the most egregious conduct, such as bribery of a judge or members of a jury; the fabrication of evidence by a party in which an attorney has been implicated; or the employment of counsel to "influence" the court. *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944); *Root Refin. Co. v. Universal Oil Products*, 169 F.2d 514 (3rd Cir. 1948); *Rozier v. Ford Motor Co.*, 573 F.2d 1332 (5th Cir. 1978); 7 Moores, Federal Practice ¶ 60.33, at 512. The question before the court, then, is was the conduct of plaintiff actionable as a fraud upon the court, conduct which now requires that the finality of this court's judgment be disturbed.

Initially the court observes that the challenged judgment was entered on May 17, 1977. The earliest possible date upon which this court could deem defendants' Rule 60 motion as filed would be May 30, 1980, over three years following the date the district court judgment issued. Under the express terms of Rule 60(b)(3), motions must be made within a reasonable time but not more than one year after the challenged judgment was entered; inasmuch as defendants' motion was not timely filed, Rule 60(b)(3) is inapplicable to the court's decision today.

Turning to the question of fraud upon the court, the court will, for purposes of this motion, assume the validity of defendants' statement of relevant facts. An examination of those facts, however, fails to disclose that the alleged actions of plaintiff fall within the category of conduct so egregious as to defile the judicial machinery. There has been no implication of bribery; there has been no implication that plaintiff's attorney conspired with plaintiff to fabricate any evidence presented at trial; there has been no implication that plaintiff's counsel was employed to influence the court. The only implication is that plaintiff knowingly withheld information which was material to the defense, and that plaintiff perjured himself at trial on the issue of damages. Neither instance of conduct defiles the machinery of the court; both instances when weighed against the policy providing for finality of judgments, serve to demonstrate conduct less egregious than that ruled objectionable by other courts. Moreover, neither instance demonstrates a deliberately planned and carefully executed scheme to defraud the court, thus preventing defendants from fully presenting their case. The record discloses that defendants could have *but did not* take the deposition of any campaign member on Williams' staff even though defendants knew that plaintiff had put into issue the fact that his right to seek elective office was being chilled and, therefore, damaged. They *neither* asked by way of interrogatory for the identity of witnesses, *nor* did they take the deposition of plaintiff's father, knowing plaintiff's answer to defendants' question concerning what he did with the copy of the police report was "I gave it to my father." In sum, the entire record demonstrates an absence of pre-trial discovery on the part of defendants which, in the court's best judgment, was the primary cause for defendants' inability, if one did exist, to present its defense at trial; it cannot be said that plaintiff knowingly withheld information which was material to the defense of the case.

While defendant would urge that perjury on the part of a party-plaintiff is objectionable *per se* on a motion for fraud upon the court, the court holds otherwise. Rule 60(b)(3) by its very language concerns the perjurious acts complained of, wherein it provides; "fraud ..., misrepresentation or other misconduct of an adverse party, may justify relief by the court." (Emphasis supplied). The court therefore concludes that defendants were provided sufficient opportunity to seek relief from the finality of this court's December 7, 1976, judgment by availing themselves of a timely Rule 60(b)(3) motion.

For the aforestated reasons, defendants' motion for relief from judgment is hereby DENIED.