FIRST NATIONAL LIFE INSURANCE COMPANY, Plaintiff–Appellant,

v.

CALIFORNIA PACIFIC LIFE INSURANCE COMPANY, Defendant–Appellee.

No. 88–7246.

United States Court of Appeals,
Eleventh Circuit.

June 28, 1989.

Alvin T. Prestwood, Capouano, Wampold, Prestwood & Sansone, PA, Montgomery, Ala., for plaintiff-appellant.

Robert W. Bradford, Jr., Hill, Hill, Carter, Franco, Cole & Black, Montgomery, Ala., for defendant-appellee.

Before TJOFLAT and CLARK, Circuit Judges, and ACKER *, District Judge.

CLARK, Circuit Judge:

This appeal involves a dispute between insurance companies over which one is required to provide coverage to a claimant. The dispute arises from a reinsurance agreement which requires arbitration of any disputes between the parties. The principal issues on appeal are whether summary judgment was improper and whether factual inaccuracies contained in the affidavit of the chief counsel of one insurance company requires setting aside the court's summary judgment order.

## I. Facts

Continental Association of Resolute Employers ("CARE") is a California association of small and medium size insurance companies. It provides its members with various services including access to group insurance policies. These group insurance policies are termed "CARE Plans." California Pacific Life Insurance Services (CPIS) is an insurance agency and a wholly owned subsidiary of CARE. CPIS markets and sells, but does not underwrite, the insurance policies that make up CARE Plans. California Pacific Life (CPL), which is also a wholly owned subsidiary of CARE, issues various types of insurance policies used in CARE Plans. Thus, CARE and its subsidiary, CPIS, provide the administrative and marketing services necessary to sell "CARE Plans" that CPL underwrites.

### A. The "Marketing Agreement"

CARE and CPIS, however, also utilize other insurance companies' policies in CARE Plans. In particular, on March 23, 1982, CPIS and CARE entered into a Group Insurance Marketing and Administration Agreement ("Marketing Agreement") with First National Life Insurance ("FNL") for group insurance marketing and administrative services. FNL is an Alabama corporation that issues various types of insurance policies. Under the Marketing Agreement, CPIS was to market CARE Plans that FNL underwrites. The Marketing Agreement originally did not include the state of Texas. It was later expanded to include Texas by a November 29, 1982 amendment to the Agreement. Record, Vol. 1, Tab 14. FNL thereafter issued policies which CARE and CPIS marketed in Texas.

### B. The "Reinsurance Agreement"

On March 1, 1983, FNL and CPL entered into the Reinsurance and Assumption Agreement ("Reinsurance Agreement") under which certain CARE plans listed in an attached schedule were transferred from CPL to FNL effective January 1, 1983. Record, Vol. 1, Tab 14, Exh. B. CPL remained financially responsible for all insured losses occurring prior to January 1, 1983. After this date, FNL held all rights, privileges and prerogatives in the listed CARE policies that were in force. FNL, however, did not assume CPL's liability for claims based upon representations made or actions taken by CPL employees. CPL agreed to indemnify FNL in such instances. Finally, the Reinsurance Agreement provided for arbitration of all disputes arising out of the coverage under these transferred policies.

### C. The Cascio Riding Stables CARE Policy

The CARE policy in dispute was issued to Cascio Riding Stables ("Cascio") in Aubrey, Texas. FNL asserts that in December 1981, a CPIS representative wrongfully extended insurance coverage under a CPL policy to Cynthia Coffman ("Coffman"), a sister of the representative's wife. FNL asserts that the representative knew that the Coffman sisters are the daughters of Cascio's owners and were ineligible for insurance because they were not Cascio employees. CPL claims, however, that the representative was an agent for Security Benefit Life Insurance Company (SBL) and that SBL issued the Cascio policy.

---

* Honorable William M. Acker, Jr., U.S. District Judge for the Northern District of Alabama, sitting by designation.

Coffman suffered an automobile injury in 1983 and sought coverage under the Cascio policy. FNL investigated the claim and refused coverage. Coffman then filed suit in federal district court in New Mexico ("New Mexico lawsuit") on July 3, 1986 against CPIS and FNL. CPIS filed a cross-claim in the New Mexico lawsuit claiming FNL was responsible for coverage.

### D. FNL Files Arbitration Petition

On April 24, 1987, FNL filed a petition and request for an order compelling arbitration against CPL in federal district court in Alabama ("Alabama lawsuit"). FNL alleged that pursuant to the Reinsurance Agreement CPL must indemnify and defend FNL under the policy that CPIS issued to Cascio which purportedly covers Coffman's claim.

The Reinsurance Agreement provides in pertinent part that:

It is understood and agreed that only the contractual obligations of CP Life under policies reinsured hereunder are assumed by FNL. *FNL does not assume any other liability of CP Life regarding the policies reinsured hereunder resulting from any representations made in the sale thereof, or actions taken in connection therewith, by CP Life its servants, agents, and/or employees.* In this regard, CP Life agrees to indemnify and hold FNL harmless from any and all liability, cost or expense arising from any such representation made or action taken by CP Life, its servants, agents and/or employees, or any other claims known or unknown, the basis of which originated prior to the effective date of this Agreement.[1]

Reinsurance Agreement, Clause 12 (emphasis added). FNL claims that because CPL wrongfully issued the Cascio policy, CPL must indemnify FNL pursuant to this provision in the Reinsurance Agreement. Further, because the indemnification dispute arises under the Reinsurance Agreement, FNL argues that it must be arbitrated.

### II. District Court Proceedings

In the Alabama lawsuit, both parties filed motions for summary judgment. CPL submitted copies of the Marketing Agreement and its amendments and the Reinsurance Agreement. *Id.* at Exh. A, B. CPL also entered the sworn affidavit of Mr. Stephen Sirota, CPL's general counsel. Regarding the disputed Cascio policy, Sirota stated that:

CPL did not have any policies in effect which covered anyone in the state of Texas and specifically never issued a policy which covered Cascio Riding Stables, its employees or dependents. To the contrary, *the policy covering employees of Cascio Riding Stables was issued directly by FNL* and, therefore, could not have been assumed by FNL pursuant to the Reinsurance Agreement.

Record, Vol. 1, Tab 14, Exh. 1 (emphasis added).

In support of its motion for summary judgment FNL submitted copies of the Reinsurance Agreement and the Cascio complaint and CPIS cross-complaint from the New Mexico lawsuit. FNL argued that the assertions CPIS made in its cross-complaint raise an issue of fact regarding whether CPL has any connection with the Cascio policy. In particular, FNL points to CPIS's statement in its cross-complaint that:

On the basis of information Plaintiff Cynthia Coffman provided on her application for insurance dated December 27, 1981, she was insured as an employee of Cascio Stables under a group policy with [CPL]. Effective January 1, 1983, FNL assumed all insureds covered under the [CPL] policy, including Plaintiff. By virtue of this contractual agreement between FNL and the previous carrier, FNL is solely liable for the type of loss allegedly incurred by the Plaintiff.

This statement contradicts Sirota's affidavit because Sirota asserted that FNL directly issued the Cascio policy rather than assumed it under the Reinsurance Agreement.

---

1. Record, Vol. 1, Tab 16 at Ex. C–2.

On October 14, 1987, the district court issued an order requiring both parties to submit all evidence before October 26, 1987. On November 23, 1987 the court set a pretrial conference for January 8, 1988.

On December 18, 1987, the district court held argument on the summary judgment motions during which FNL alleges that it pointed out the discrepancies between Sirota's affidavit and CPIS's cross-claim to the district court.[2] On the same day, FNL filed a motion requesting permission to submit a counter-affidavit on the summary judgment motion.

On January 8, 1988, the district court denied FNL's motion to submit a counter-affidavit and granted CPL's motion for summary judgment. In its order, the district court held that pursuant to the Marketing Agreement, FNL directly issued the CARE policy to Cascio. The court held that CPL was not a party to this transaction and that CPL did not have any policies in effect in Texas at the time the Reinsurance Agreement was entered in March 1983. The court stated that:

> The undisputed evidence before this Court clearly demonstrates that CPL was not a party to the agreement under which insurance coverage issued by FNL was extended in Texas to Cascio Riding Stables and its employees. CPL is a party to an agreement with FNL which contains an arbitration provision. However, that agreement is for the reinsurance and assumption of CPL policies by FNL. CPL did not issue any policies in Texas or to the Cascio Riding Stables.

Record, Vol. 1, Tab 26 at 8. The court, therefore, granted CPL's motion for summary judgment and denied arbitration.[3]

FNL filed a motion for a new trial or to alter or amend the judgment based on FNL's excusable neglect or CPL's misconduct in failing to correct the factual inaccu-

racies in Sirota's affidavit. FNL attached the affidavits of Randall K. Hunter, FNL's Chairman and President, and Alvin T. Prestwood, FNL's attorney in the New Mexico suit, to its motion. In response to FNL's motion, CPL for the first time acknowledged the erroneous statement in Sirota's affidavit:

> For the benefit of the court's knowledge, there was one inadvertent misstatement on the Sirota affidavit. Upon his initial investigation, it was Sirota's belief that the insurers of the Texas business were only [SBL] and later FNL. However, for a brief period of time in 1982, CPL did insure CARE Plans in the state of Texas. With that one exception the Sirota affidavit is relied on in toto. However, FNL became the insurer of all CARE Plans in the state of Texas pursuant to the November 29, 1982 amendment to the Marketing Agreement.

Record, Vol. 1, Tab 32, at 9

The district court held that FNL's motion amounted to a Rule 59 motion plus a motion for relief from mistake, inadvertence, surprise or excusable neglect or from fraud, misrepresentation or other misconduct of an adverse party under Rule 60(b)(1) & (3). The court ruled that FNL's counsel had been inexcusably neglectful in not filing a counter-affidavit or other evidence in response to Sirota's affidavit and that CPL's counsel had not acted fraudulently or unprofessionally in failing to disclose the factual inaccuracies without FNL first providing some evidence to rebut the inaccuracies. FNL appeals the district court's order.

### III. Discussion

 As the district court noted, the gravamen of this action is whether the Cascio CARE policy is subject to the Reinsurance

---

**2.** No court reporter was present at the argument.

**3.** The court stated that FNL failed to provide any counter-affidavits but failed to explicitly rule on the admissibility of the pleadings from the New Mexico lawsuit. In its March 25, 1988 memorandum, the court later stated that FNL "failed to submit any evidence in support of its

motion which conformed with the requirements of Rule 56(e)" and that it "has no credible evidence before it which contradicts the averments of Mr. Sirota." Record, Vol. 1, Tab 35 at 5. The court, therefore, implicitly ruled that the New Mexico pleadings were not properly authenticated and therefore inadmissible.

Agreement between FNL and CPL. The critical fact, therefore, is whether FNL assumed the Cascio CARE policy under the Reinsurance Agreement or directly issued the Cascio CARE policy. If FNL directly issued the Cascio CARE policy, FNL cannot prevail in its request for arbitration and indemnification. If, however, CPL issued or assumed coverage under the policy and FNL subsequently assumed such coverage under the Reinsurance Agreement, FNL has a legitimate claim that CPL must submit to arbitration.

## A. Summary Judgment

The first issue is whether the district court's grant of summary judgment was proper. Our independent and plenary review of the district court's order granting summary judgment applies the same legal standards that control the district court's determination whether any genuine issue of material fact exists. *Mercantile Bank & Trust Co. v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir.1985); Fed.R.Civ.P. 56.

### 1. FNL's Burden Under *Celotex*

After adequate time for discovery and upon motion, Federal Rule of Civil Procedure 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element necessary to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Further, Rule 56(e) requires that the nonmoving party go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing

there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553.

FNL failed to meet its burden under *Celotex.* Although FNL was not required to submit affidavits in opposition to CPL's summary judgment motion, FNL was required to provide some evidence demonstrating that FNL assumed the Cascio CARE policy from CPL pursuant to the Reinsurance Agreement. The only evidence FNL provided on this point was the Coffman complaint and the CPIS cross-claim from the New Mexico suit.[4]

CPL, however, argues that because the Coffman complaint and CPIS cross-claim were not authenticated nor self-authenticating the district court could not consider them.[5] CPL therefore asserts that FNL submitted no admissible evidence which indicates that FNL assumed the Cascio policy from CPL pursuant to the Reinsurance Agreement. FNL does not address the admissibility issue.

The photocopies of the Coffman complaint and CPIS cross-claim that FNL submitted did not bear the imprint of the New Mexico court's seal nor were they supported by an affidavit of an officer having legal custody of the originals attesting to their authenticity. They were therefore not properly authenticated under Fed.R. Civ.P. 44(a)(1) or Fed.R.Evid. 902(1) or (2). *AMFAC Distrib. Corp., v. Harrelson*, 842 F.2d 304, 306 (11th Cir.1988). The district court, therefore, properly granted summary judgment in CPL's favor because of FNL's failure to provide any admissible evidence establishing that the Cascio CARE policy is subject to the Reinsurance Agreement between FNL and CPL. Furthermore, even if FNL had properly authenticated the New Mexico pleadings, we find that summary judgment would be proper.[6]

---

4. FNL claims that the district court improperly concluded that Sirota's testimony was uncontroverted because these pleadings contain statements differing from Sirota's affidavit testimony. In particular, CPIS's statement in its cross-claim that FNL assumed the coverage of the Cascio policy from CPL contradicts Sirota's statement that CPL had not issued any policies in Texas and that FNL directly issued the Cascio policy.

5. CPL also suggests that the pleadings are not relevant because CPL is not a party to the New Mexico suit.

6. Broadly construed, the Coffman complaint simply claims that CPIS issued the Cascio policy and that FNL was a joint venturer with CPIS. The complaint provides no evidence on the question of whether CPL issued the Cascio policy. The CPIS cross-claim contains the assertion

## B. Rule 60(b)

On February 4, 1988, about a month after the district court's entry of summary judgment, CPL's counsel first admitted that Sirota's affidavit contained untrue statements. Record, Vol. 1, Tab 32, at 9. FNL asserts that it is entitled to have the judgment set aside because Sirota's false statement prejudiced the presentation of its case. FNL also claimed it was excusable neglect not to submit counter-affidavits before the deadline the district court imposed. The remaining issues, therefore, are whether the district court erred in refusing to grant FNL's Rule 60(b) motion given the false statement in Sirota's affidavit and FNL's belated request to submit counter-affidavits.[7] We address FNL's latter contention first.

### 1. 60(b)(1)—Excusable Neglect

■ The district court held that FNL's failure to timely submit evidence for the court to consider on summary judgment amounted to inexcusable neglect.[8] The court, therefore, denied FNL's motion under 60(b)(1) because FNL failed to demonstrate that the proffered materials could not have been provided earlier. FNL apparently abandons this issue on appeal and simply states that its counsel is willing to "absorb whatever blame" arises from the court's finding of inexcusable neglect. Instead, FNL directs our attention to CPL's alleged fraud and misrepresentation.

An inspection of FNL's additional submissions reveals the correctness of the district court's holding. The additional materials FNL submitted with its 60(b) motion included two affidavits, a computer printout of insurance policies, and various correspondence and agreements regarding the Reinsurance and Marketing Agreements. Record, Vol. 1, Tab 29, Exh. 3–7. Our review of these materials leads us to agree with the district court that nothing prevented FNL from submitting such materials in a timely manner. We therefore find the district court properly denied FNL's motion to supplement its motion for summary judgment based on FNL's counsel's inexcusable neglect.

### 2. 60(b)(3)—Fraud or Misrepresentation

■ FNL alleges that the district court erred in refusing to set aside its summary judgment order because CPL failed to correct the factual error in Sirota's affidavit prior to summary judgment. FNL claims that Sirota may have been technically correct in stating that CPL did not *issue* a policy which covered Cascio Riding Stables because CPL became the successor carrier to SBL. FNL therefore asserts that Sirota may have been intentionally misleading in his use of the term "issue." Record, Vol. 1, Tab 29, at 9.

CPL argues that FNL had from September 28, 1987 until December 18, 1987 to respond to Sirota's affidavit by providing additional evidence but failed to do so. In CPL's view, the district court was justified in not admitting FNL's additional affidavits and granting summary judgment against FNL because of FNL's dilatory efforts.

Under Rule 60(b)(3), the movant must demonstrate that the adverse party en-

---

that information contained in Coffman's insurance application indicates she was insured under a CPL CARE policy. From this information, CPIS concludes that FNL assumed Coffman's policy under the Reinsurance Agreement. This conclusion has little evidentiary value because CPIS's contentions about whether FNL assumed the Cascio policy under the Reinsurance Agreement are pure speculation without further evidentiary support.

Neither of these pleadings, therefore, provides evidence of sufficient caliber or quantity to allow a rational trier of fact to find that FNL assumed the Cascio policy from CPL. Because FNL cannot simply rely on its own pleadings to avoid summary judgment it would be anoma-

lous to allow FNL to rely on assertions in third party pleadings in a separate (albeit related) lawsuit to avoid summary judgment. The Coffman and CPIS pleadings are of minimal evidentiary value and fail to create a genuine issue of fact. Summary judgment for CPL would therefore be appropriate.

7. In its March 25, 1988 Memorandum Opinion, the district court analyzed FNL's Rule 59 motion as one under Rule 60(b). FNL's briefs, however, do not parallel the district court's analysis but instead analyze the issue almost entirely under Rule 59.

8. Record, Vol. 1, Tab 35 at 4.

gaged in fraud or other misconduct that prevented the movant from fully and fairly presenting its case. *Harre v. A.H. Robins Co.,* 750 F.2d 1501, 1503 (11th Cir.1985).[9] We may reverse a district court's denial of a Rule 60(b) motion only for an abuse of discretion. *Montgomery v. Hall,* 592 F.2d 278, 279 (5th Cir.1979).

We find the district court properly denied FNL's 60(b)(3) motion. First, FNL failed to provide evidence establishing that Sirota's affidavit testimony amounts to fraud or similar misconduct. Although we do not endorse the somewhat careless and indifferent manner CPL's counsel displayed in failing to bring the district court's attention to the factual error, we cannot conclude that such conduct amounts to fraud.

Second, we find that CPL's failure to correct the Sirota affidavit before judgment did not prevent FNL from fully and fairly presenting its case. FNL failed to provide the court with any materials or counter-affidavits to rebut Sirota's affidavit. The district court stated that it would have granted a request for an extension of time to file additional materials had FNL done so in a timely manner. FNL, however, filed for an extension on December 18, 1987 well after the deadline the court had set.

FNL knew or should have known early in the course of litigation that statements in Sirota's affidavit were not accurate on the dispositive factual issue in this action. FNL had the opportunity to submit counter-affidavits but did not. Instead, FNL attempted to belatedly admit counter-affidavits after the deadline the court had set. Although Sirota's affidavit contains erroneous information regarding an important factual matter, FNL did nothing to rebut it.[10] FNL is blameworthy for not fully

developing its case and its counsel has failed to demonstrate in what ways FNL was prevented from presenting its case by Sirota's misstatements. The district court, therefore, properly denied FNL's Rule 60(b)(3) motion.

IV. Conclusion

Because FNL failed to provide evidence sufficient to raise a genuine issue of material fact, we affirm the district court's grant of summary judgment for CPL. We also affirm the district court's denial of FNL's motions to set aside the judgment based on excusable neglect or fraud and misrepresentation. AFFIRMED.

9. In *Harre,* the court found that a defense expert witness committed perjury on the critical issue in the case and that the perjury prejudiced the plaintiffs' presentation of their case. The court was "deeply disturbed by the fact that a material expert witness, with complicity of counsel, would falsely testify on the ultimate issue of causation." *Id.* at 1505. The court, therefore, found that the district court had abused its discretion in denying the plaintiffs' Rule 60(b)(3) motion.

10. *See, e.g., Williams v. Board of Regents of University System of Georgia,* 90 F.R.D. 140 (M.D.Ga.1981). In *Williams,* the court refused to overturn a judgment even though the plaintiff may have knowingly withheld material information because the defendant failed to take advantage of discovery opportunities to determine the relevant facts prior to trial.