**In re H. Roger LAWLER, et al., Debtors.**

**H. Roger LAWLER, et al., Plaintiffs,**

**v.**

**LOMAS & NETTLETON FINANCIAL CORPORATION, Defendant.**

**Bankruptcy No. BK 3–76–346–G.**

United States Bankruptcy Court, N.D. Texas, Dallas Division.

May 17, 1985.

Craig Goodrum, Jenkens & Gilchrist, C. Thomas Wesner, Jr., Dallas, Tex., for debtors.

Larry M. Lesh, Locke, Purnell, Boren, Laney & Neely, Dallas, Tex., for Lomas & Nettleton Financial Corp.

## MEMORANDUM OPINION

JOHN C. FORD, Bankruptcy Judge.

On March 29, 1984, this Court heard the Motion to Dismiss filed herein by Defendant in response to the Complaint, filed by Debtor as Plaintiff, seeking to set aside an order entered in these proceedings some seven years earlier. In addition, Plaintiff sought to invalidate the foreclosure of certain liens on real property alleged to be property of the estate.

### I. *Procedural Background*

On January 9, 1976, an involuntary petition in bankruptcy was filed against Debtor in the District of Nevada. The case was subsequently transferred to the Northern District of Texas, and on January 20, 1978, Debtor consented to an adjudication of bankruptcy.

Defendant, a creditor in the case, filed its complaint pursuant to Rule 601 of the old Bankruptcy Rules, seeking relief from the automatic stay, on April 27, 1977. The relief sought consisted of permission to sell approximately 52 acres of land located in Collin County, Texas, against which Defendant held a first lien deed of trust. By its order of April 29, 1977, the Court granted the requested relief with respect to said 52 acres, and the land was sold shortly thereafter.

Defendant filed a second complaint for relief from the automatic stay on March 13, 1977 with respect to real property, against which it held a first lien deed of trust, located in Dallas and Tarrant Counties. On July 1, 1977, the Court authorized the foreclosure of these liens according to the respective deeds of trust, and on July 5, 1977, Defendant caused the property to be sold.

In addition to the foregoing property, Defendant held a first lien deed of trust against approximately 268 acres located in Collin County, to which an entity known as 121 Preston Corporation held title. On September 1, 1977, a tract composed of approximately 4.59 acres of this property was sold by Defendant without first obtaining the Court's approval. Eighteen months later, on April 3, 1979, Defendant's lien on the remaining 263.5 acres was foreclosed and the property was sold pursuant to Defendant's instructions. No order was sought or entered with respect to the latter sale.

On March 16, 1983, Plaintiff filed this adversary proceeding to set aside the foregoing orders and to declare void the described foreclosures. On April 11, 1983, Defendant filed its Motion to Dismiss for failure to state a claim, and the complaint was dismissed by this Court on March 29, 1984.

## II. *Factual Background*

In the years preceeding Plaintiff's bankruptcy, Defendant and Plaintiff had entered numerous agreements involving millions of dollars secured by liens on hundreds of acres of real property, principally in Dallas, Denton, Collin and Tarrant Counties. As Plaintiff's financial circumstances began to deteriorate, Defendant initiated foreclosure proceedings against various properties. By its complaint, Plaintiff sought to have these foreclosures set aside. Plaintiff's contentions were premised upon two sets of circumstances, i.e., that the orders entered by the Court in 1977 were improper due to Defendant's alleged fraudulent testimony, and that the foreclosures not specifically authorized by the 1977 orders were in violation of the automatic stay imposed by former Bankruptcy Rule 601, and were therefore void *ab initio*.

With respect to the first prong of Plaintiff's attack, it was alleged that Defendant made certain misrepresentations of a material nature during testimony at the April 29, 1977 hearing on the motion for relief from stay. More specifically, it is alleged that Defendant testified falsely as to the value of the property in question. At that hearing, Defendant had stated that the fair market value of the land was considerably less than the value of the loans thereby secured. Defendant also denied having made or studied any appraisal of the land indicating a higher value. According to Plaintiff's allegations, however, Defendant had knowledge of an appraisal which set forth a value far in excess of the outstanding loan balances. It is Plaintiff's position that Defendant's testimony, in light of the alleged awareness of a higher appraised value, amounted to a fraud upon the Court, and that the order lifting the stay was tainted and should be set aside.

Plaintiff's second contention goes to the validity of the foreclosures not expressly permitted by the 1977 orders. Plaintiff asserts that the land was held by 121 Preston Corporation, in which Plaintiff owned fifty percent of the shares, solely as his agent and not on its own behalf. Consequently, according to Plaintiff, the land was property in the constructive possession of the Debtor and was therefore shielded by the automatic stay. As a result, any foreclosures attempted by Defendant were simply without effect, and the action was to be governed by the statute of limitations covering trespass to try title, a ten year period, rather than the four year limitations period applicable to contract disputes. Defendant admits that the corporation was formed expressly for the purposes of holding title to the land and to permit Defendant to charge a higher rate of interest than would have been permitted had the borrower been Plaintiff individually. It was also noted by Defendant that Plaintiff held less than a controlling interest in the corporation, and that the remaining shareholders had not been adjudicated bankrupt in this or any other proceeding. Defendant claimed that the corporation and Plaintiff were two distinct and separate entities for purposes of ascertaining ownership of the subject property, and that the land in question was not therefore within the jurisdiction of the Court.

## III. *Conclusions of Law*

### A. *Lawler's Complaint to Set Aside the 1977 Orders is Barred by Laches*

Plaintiff seeks to set aside orders issued by the bankruptcy court on April 29, 1977 and July 1, 1977. The basis for Plaintiff's action appears to be an alleged fraud on the Court, consisting of misstatements and failures to disclose by Defendant. While the veracity of Plaintiff's allegations has not been tested, this Court is compelled to accept such assertions as true for purposes of Defendant's Motion to Dismiss. *Abdul Alim-Amin v. Universal Life Insurance Company of Memphis*, 706 F.2d 638, 640 (5th Cir.1983); *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). This Court is mindful that motions to dismiss an action for untimely filing are disfavored, as the limitation defense is not among those set forth in Rule 12(b), Federal Rules of Civil Procedure, *Sargent v. Genesco, Inc.*, 352 F.Supp. 66, 77 (M.D.Fla.

1972), and that this Court must therefore deny such a motion unless it is certain that Plaintiff cannot prove facts which would entitle him to relief. *Abdul Alim-Amin, supra,* at 640; *Mann v. Adams Realty Company,* 556 F.2d 288, 293 (5th Cir.1977). Nonetheless, it is clear from the facts of the case at bar that Defendant's Motion to Dismiss should be granted.

■ It is important to note that the orders of which Plaintiff complains were entered nearly six years before this adversary complaint was filed. Prior to the entry of these orders, full evidentiary hearings were held, at which time Plaintiff was present and represented by competent counsel. Plaintiff had been in possession of the land in question for several years. He had every opportunity to investigate and develop the evidence in support of his claims and undermining the assertions of Defendant's witness. Nothing that Defendant did or said precluded Plaintiff from presenting whatever evidence or argument he may have developed. There is nothing to suggest that Plaintiff was somehow prevented from pursuing his claims of fraudulent misrepresentation on a timely basis. Even indulging the mandatory presumption in favor of Plaintiff's allegations, it is clear that the facts alleged do not overcome the lengthy interlude between entry of the orders and the filing of the complaint herein.

Plaintiff seeks nothing more than to sidestep the consequences of his failure to pursue his claims earlier by resort to Rule 60(b), Federal Rules of Civil Procedure. This rule provides, in pertinent part,

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding, for the following reasons: ... (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party.... [t]he motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after judgment ... was taken.

■ It is clear from the terms of the rule itself that where an order, in this case an order modifying the automatic stay, is attacked by *motion* on the basis of fraud, such action must be taken within one year of judgment. Plaintiff notes, however, and Defendant concedes, that the one year limitation period appears to apply only to motion practice, and not to the institution of an independent action. "[Rule 60(b)] does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding ... or to set aside a judgment for fraud upon the court." Rule 60(b), Federal Rules of Civil Procedure. In the case at bar, time has obviously expired for a motion under Rule 60(b). It is Plaintiff's position that an independent action is not similarly precluded by the one year limitation on motions, a position with which this Court and others are in agreement. *See, e.g., Budge v. Post,* 544 F.Supp. 370, 376 (N.D.Tex.1982). As the Advisory Committee has stated,

if the right to make a motion is lost by the expiration of time limits fixed in these rules, the only other procedural remedy is by a new or independent action to set aside a judgment upon those principles which have heretofore been applied in such an action. Where the independent action is resorted to, the limitations of time are those of laches or statutes of limitations.

Rule 60, Fed.R.Civ.P. advisory committee note.

It is thus clear that an independent action is treated differently for limitations purposes than a Rule 60(b) motion. This is not to say, however, that Plaintiff is given carte blanche to pursue his remedy at his leisure. To the extent he relies upon principles of equity as the basis for his relief, Plaintiff must be concerned with the time constraints imposed by the doctrine of laches. In the case at bar, it is beyond question that Plaintiff sat upon his rights for six years, an inordinate interval for him to refrain from enforcing his claim. In *Lockwood v. Bowles,* 46 F.R.D. 625 (D.D.C. 1969), the defendants in the original trial filed an independent suit fourteen years

later requesting the court to set aside its earlier judgment. The basis for the new suit was the allegation that a fraud had been practiced upon the court in the earlier action, in that one of the witnesses therein had been coerced to commit perjury, which led to entry of an erroneous judgment. The Court noted that, for purposes of an independent action, the one year limitation of Rule 60(b) did not apply, but that "... such an independent action may be barred by laches. That doctrine serves as a bar when the party seeking relief has not exercised due diligence in presenting his claim or defense, and the opposing party has been prejudiced by such delay." 46 F.R.D. at 629. In the case at bar, the foreclosures and sales took place over six years ago. Title has undoubtedly passed at least once, and possibly several times, since those sales took place. For Plaintiff to attempt to resurrect his claim now, after such a long interval and despite the likelihood of subsequent transfers of title, is manifestly unreasonable. As the *Lockwood* court stated, "the 'new' evidence which [Plaintiff] would introduce in an independent action ... was largely available ... when the original action was tried. [Plaintiff's] failure to discover it and make skillful use of it demonstrates lack of diligence justifying the invocation of the doctrine of laches." 46 F.R.D. at 630. There being no explanation offered for Plaintiff's tardy presentation of evidence concerning the alleged fraud, this Court can only conclude that Plaintiff slept upon his rights, and that laches will therefore preclude the instant action. To the extent Plaintiff bases his claim on the Court's equitable powers, the delay is fatal.

In this, a Bankruptcy Act case, Plaintiff was required to conform to the provisions of Rule 60, Fed.R.Civ.P., as implemented by former Bankruptcy Rules 923 and 924. In order to succeed in setting aside the orders, Plaintiff was required to show that he had substantial evidence of fraud which was not obtainable by due diligence in time to present it either in the original hearings or in motions for new trials. In any case, Plaintiff's claim must be brought within a "reasonable time" as required by Rule 60. *Nichols v. Alker*, 235 F.2d 246, 247 (2d Cir.1956). Here, Plaintiff was in possession of the land at the time of the hearings, and had been in possession for some time. He was granted notice on all of the Defendant's motions to which he was entitled. Nothing prevented him from presenting evidence of the land's value to impeach Defendant's testimony and refute its claims; indeed, Plaintiff was ideally situated to do just that. Even assuming, *arguendo*, that Defendant's witness perjured himself on the stand with respect to the value of the land at issue, such behavior would not support the present action. Plaintiff's proper avenue for relief was a timely filed motion under Rule 60(b)(3). That Plaintiff did not avail himself of this avenue is not sufficient ground for maintenance of this action. *See Williams v. Board of Regents of University of Georgia*, 90 F.R.D. 140, 142–3 (M.D.Ga.1981).

In addition, Plaintiff failed to avail himself of the avenues of appeal offered by the old Rules. The manner of appeal specified in form Rules 801 and 802 require filing a notice of appeal within ten days of the order from which appeal is sought. The implication of Rule 801, that appeal is precluded if notice thereof is not timely filed, is clear and unmistakable. Plaintiff's failure to pursue his appellate remedies cannot justify the prosecution of the same claim in an independent action filed six years later. *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 402 (5th Cir.1981); *In re Walker*, 22 B.R. 776 (W.D.Mo.1982). *Cf. In re Roco Corporation*, 37 B.R. 770 (Bkrtcy.D.R.I.1984); *In re Johnston*, 37 B.R. 361 (Bkrtcy.D.Vt.1984). Simply put, Plaintiff cannot be permitted to use the independent action to pursue an out of time appeal. *Addington v. Farmer's Elevator Mutual Insurance Company*, 650 F.2d 663, 668 (5th Cir.1981); *Banker's Mortgage Company v. United States*, 423 F.2d 73, 79 (5th Cir.1970), *cert. den.* 399 U.S. 927, 90 S.Ct. 2242, 26 L.Ed.2d 793 (1970). Had it been pursued, Plaintiff's assertion of fraud on the Court could have been remedied on

appeal. The allegation in the adversary complaint that Defendant defrauded the Court through material misrepresentations and failures to disclose material facts is nothing more than an attempt to relitigate the credibility of the witnesses in the former proceedings. As such, it is properly subject to dismissal. *Addington v. Farmer's Elevator Mutual Insurance Company, supra.*

■ As to the merits of the claim concerning the fraud allegedly perpetrated by Defendant, it is instructive to examine the nature of the acts of which Plaintiff complains. It is alleged, and taken as true for purposes of the hearing on Defendant's Motion to Dismiss, that in its testimony, Defendant made certain material misrepresentations and attempted to conceal relevant evidence. This, however, does not rise (or, more properly, descend) to the level of fraud sufficient to justify the relief sought by Plaintiff.

> Generally speaking, only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated, will constitute a fraud on the court. Less egregious misconduct, such as nondisclosure to the court of facts allegedly pertinent to the matter before it, will not ordinarily rise to the level of fraud on the court.

*United States v. International Telephone & Telegraph Corporation,* 349 F.Supp. 22, 29 (D.Conn.1972), *aff'd without opinion sub nom. Nader v. United States,* 410 U.S. 919, 93 S.Ct. 1363, 35 L.Ed.2d 582 (1973). The case at bar features none of the foregoing examples of conduct which would justify setting aside an order entered more than six years ago. The type of fraud contemplated in the provisions of Rule 60(b) permitting an independent action to set aside a judgment is clearly in the nature of interference with the functioning of the judicial process itself rather than mere discrepancies in or distortion of testimony. The rationale behind such an approach is obvious. With respect to fraudulent misrepresentations made by a witness, counsel for the adverse party has ample opportunity, both during and after trial, to impeach the witness, present controverting evidence, and otherwise bring the fraudulent conduct to the attention of the Court. Where, however, the process itself is tainted through misconduct by judge, jury, or counsel, no such redress is available; the very means by which the complaint is presented serve to perpetrate the fraud of which the party complains.

> "Fraud upon the court" should, we believe, embrace only that species of fraud which does or attempts to, subvert the integrity of the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication, and relief should be denied in the absence of such conduct.

7 Moore's Federal Practice 60.33 (2d ed. 1983). *See also Kenner v. Commissioner of Internal Revenue,* 387 F.2d 689, 691 (7th Cir.1968); *Martina Theatre Corporation v. Schine Chain Theatres, Inc.,* 278 F.2d 798, 801 (2d Cir.1960).

In *United States v. Throckmorton,* 98 U.S. 61, 8 Otto 61, 25 L.Ed. 93 (1878), the Supreme Court discussed the difference between fraud which prevented a party from obtaining a fair hearing before an impartial tribunal, and fraud involving the substance of the evidence presented.

> Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, as by keeping him away from the court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interest to the other side, —these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for

which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and fair hearing.... [o]n the other hand, the doctrine is equally well settled that the court will not set aside a judgment because it was founded on a fraudulent instrument, or perjured evidence, or for any matter which was actually presented and considered in the judgment assailed..

98 U.S. at 67, 8 Otto 61.

Plaintiff has not alleged that he or his counsel were somehow prevented from appearing at the hearing or otherwise precluded from presenting evidence to substantiate their own claims and arguments. Plaintiff had ample opportunity to raise issues of fraud on the court at the 1977 trials or via the appellate process thereafter. "An independent action for fraud may not be entertained if there was an opportunity to have the ground now relied upon to set aside the judgment fully litigated in the original action." *M.W. Zack Metal Company v. International Navigation Corporation of Monrovia,* 675 F.2d 525, 529 (2d Cir.1982). *Accord, Rubena v. Ellis,* 202 F.2d 415, 417 (5th Cir.1953); *England v. Doyle,* 281 F.2d 304 (9th Cir.1960). *See also Lockwood v. Bowles, supra,* at 632–33; *Konigsberg v. Security National Bank,* 66 F.R.D. 439, 442 (S.D.N.Y.1975); *United States v. Rexach,* 41 F.R.D. 180, 185 (D.P.R.1966). While this may appear to work a hardship on Plaintiff, assuming his allegations are true, it must be remembered that

the mischief of retrying every case in which the judgment or decree rendered on false testimony, given by perjured witnesses, or on contracts or documents whose validity was in issue, and which are afterwards ascertained to be forged or fraudulent, would be greater, by reasons of the endless nature of the strife, than any compensation arising from doing justice in individual cases.

*United States v. Throckmorton, supra,* 98 U.S. at 68–9, 8 Otto 61.

Plaintiff's independent action must therefore be dismissed.

### B. *Lawler's Claim As To The Foreclosures Is Untimely*

Plaintiff has asserted in argument and in briefs that this action to set aside the foreclosures not specifically addressed by the 1977 orders is governed by the Texas statute of limitations concerning actions to try title, consisting of a ten-year period, rather than the two and four year periods governing actions for fraud or on a contract, respectively. Plaintiff reaches this conclusion by asserting that the record title holder of the property in question, 121 Preston Corporation, was the alter ego of Mr. Lawler, and that the bankruptcy estate therefore had sufficient interest in the property for the automatic stay of old Rule 601 to bar actions against it. If this were the case, of course, the foreclosures would have been in violation of the automatic stay, and therefore void *ab initio,* and an action to try title would thus lie, Defendants and their assigns being naught but mere trespassers. Despite its convolutions, this argument has piqued the interest of the Court. It has not, however, altered the Court's conclusion that Plaintiff simply waited too long to seek his remedy.

### 1. *The Alter Ego Doctrine May Not Be Invoked by Lawler*

According to Plaintiff's theory, it is conceivable that neither Lomas & Nettleton nor any other creditor could proceed against any property held by a corporation in which Plaintiff held a significant interest. Taken to its logical conclusion, the creditor of any corporation would be prevented from enforcing its rights against that corporation so long as one of the shareholders was a debtor in bankruptcy and shielded by the stay, since, as Plaintiff asserts, the corporation and all its assets would be considered property in the actual or constructive possession of the debtor at the date of bankruptcy. Such an interpretation stretches the words and intent of old Rule 601 to the point of absurdity. It must be remembered that, notwithstanding

Plaintiff's claims of identity with 121 Preston Corporation, Mr. Lawler held only a fifty percent, i.e., less than controlling, interest. Nothing was offered to suggest that corporate formalities had been ignored, or that standard accounting practices were not followed, or that 121 Preston Corporation was grossly undercapitalized, or that any other signposts of abuse of the corporate form were present. Simply because a shareholder owns or controls fifty percent of a corporation, without the presence of one or more of the foregoing indications of abuse, cannot justify the disregard of the corporate entity by this Court. *Torregrossa v. Szelc*, 603 S.W.2d 803, 804 (Tex. 1980); *Pace Corporation v. Jackson*, 155 Tex. 179, 284 S.W.2d 340 (1955); *Kroger Company v. J. Weingarten, Inc.*, 380 S.W.2d 145 (Tex.Civ.App.—Houston [1st Dist.] 1964, writ ref'd n.r.e.).

Even if Mr. Lawler owned a majority of the corporation's stock, a circumstance not present here, this Court could not, on that basis alone, properly consider the corporation the alter ego of the Plaintiff, or declare the Plaintiff the legal owner of the corporation's assets. *Evans v. General Insurance Company of America*, 390 S.W.2d 818, 822 (Tex.Civ.App.—Dallas 1965, no writ); *Commonwealth of Massachusetts v. Davis*, 140 Tex. 398, 168 S.W.2d 216 (1943); *Angus v. Air Coils, Inc.*, 567 S.W.2d 931 (Tex.Civ.App.—Dallas 1978, no writ).

■ In the case at bar, Plaintiff readily admits that 121 Preston Corporation was duly incorporated for a legal purpose according to the laws of the state of Texas; indeed, Mr. Lawler obtained benefits not otherwise available to him by virtue of the incorporation. This Court feels that Mr. Lawler may therefore be estopped from denying the separate existence of 121 Preston Corporation as a wholly distinct legal entity. *Mauritz v. Schwind*, 101 S.W.2d 1085, 1091–2 (Tex.Civ.App.—Amarillo 1937, writ dism'd). To the extent that this Court is willing to entertain Mr. Lawler's assertions, the doctrine could not possibly work to Plaintiff's advantage. It is well established that "in order for the doctrine of alter ego to apply, there must be an attempted use of a corporate vehicle in a fraudulent manner or in a manner which would ordinarily defraud an unsuspecting or good faith third party." *Paine v. Carter*, 469 S.W.2d 822, 827 (Tex.Civ.App.— Houston [14th Dist.] 1971, writ ref'd n.r.e.). Mr. Lawler thus has no standing to invoke the doctrine. He is obviously not an unsuspecting third party with respect to the transactions at issue here. He does not claim to have been defrauded by the corporation, or to have relied to his detriment upon the corporate form. By his argument, he attempts to transform what is intended to be an equitable sword for the use of aggrieved creditors into a shield for a debtor in default of legitimate obligations. In this, a court of equity, such an argument simply cannot be accepted. *Cf. In re Balducci Oil Company, Inc.*, 33 B.R. 847, 853 (Bkrtcy.D.Colo.1983); *In re Loughnane*, 28 B.R. 940, 942 (Bkrtcy.D. Colo.1983).

2. *As a Mere Shareholder, Lawler Had No Interest In Specific Corporate Assets*

■ Having established that Mr. Lawler and 121 Preston Corporation were indeed two separate and wholly distinct legal entities, it remains for this Court to determine the extent, if any, of Mr. Lawler's interest in specific corporate assets, namely, the tracts upon which Lomas & Nettleton foreclosed without benefit of a court order lifting the stay. It is plain that the stay of Rule 601 reached as far as the debtor's interests; thus, if Mr. Lawler, as a shareholder, could claim a property interest in the land at issue, the foreclosures were in violation of the stay. If such were the case, the foreclosures would have been void, and Lomas & Nettleton would assume the status of trespassers. Mr. Lawler's remedy would lie in an action to try title, and the ten year statute of limitations would apply, permitting Mr. Lawler to proceed with the present action. As the reader may have surmised, this Court admires, but is not convinced by, this ingenious argument.

Generally speaking, the extent of a debtor's interest in property, and therefore the scope of the automatic stay, is a question of bankruptcy law. State law, however, is an important factor in the determination. *In re Tidwell,* 4 B.R. 100 (Bkrtcy.N.D.Tex. 1980); *In re Martinson,* 26 B.R. 648, 651 (D.N.D.1983); *In re Turner,* 29 B.R. 628, 630 (Bkrtcy.D.Me.1983). It has long been accepted in Texas jurisprudence that

> [u]nder elemental corporation law, the title to the corporation's property is in the corporation, and not in the stockholders. The stockholder is in no sense the legal owner of the property of the corporation. The stockholder has a right to his share of the profits while the corporation is a going concern, and to a share of the proceeds of its assets, when sold for distribution in the case of its dissolution and winding up. Even then, the rights of creditors are superior to those of the stockholders.

*Byerly v. Camey,* 161 S.W.2d 1105, 1110 (Tex.Civ.App.—Fort Worth 1942, writ ref'd w.o.m.). In the case at bar, as in *Byerly,* Plaintiff attempts to cast his complaint as in the nature of trespass to try title. In *Byerly,* a group of shareholders in a corporation organized for the purpose of holding title to land sought to establish their interests in specific property held as assets of the corporation. The shareholders advanced a number of arguments, *inter alia,* that the corporation held the land in trust for the benefit of its members, and that the shareholders therefore had at least an equitable interest in the specific assets. The court disagreed.

> Plaintiffs have not shown any title, legal or equitable, to the land in question. The most they have shown is a right to an allotment from the corporation, if properly and timely asserted. But a right of this nature is not a present title or interest in land, legal or equitable, such as will support a suit for title, especially against parties other than the corporation.

*Byerly, supra* at 1111. The same principles apply in the case at bar. Mr. Lawler was a mere shareholder in 121 Preston Corporation. His interest was limited to a right to distribution of profits during the life of the corporation, and to a pro rata share of the proceeds of its assets upon dissolution and after all creditors had been satisfied. Mr. Lawler had no interest sufficient to support a suit to try title with respect to the specific real estate at issue here. Consequently, it cannot be said that Mr. Lawler's estate in bankruptcy had a sufficient interest in the specific land held by the corporation to bring it within the embrace of the automatic stay. *See Sun Towers, Inc. v. Heckler,* 725 F.2d 315, 331 (5th Cir.1984); *Monterey Life Systems, Inc. v. United States,* 225 Ct.Cl. 50, 635 F.2d 821 (1982).

This Court does acknowledge that, as between the corporation and its shareholders, the latter have an equitable interest in assets held by the former. *Berl v. Crutcher,* 60 F.2d 440, 444 (5th Cir.1932); *McAlister v. Eclipse Oil Company,* 128 Tex. 449, 98 S.W.2d 171, 176 (1936). Two points must be made in this regard. First, this equitable interest is recognized primarily in disputes between a shareholder and the corporation in which shares are owned. Such is not the case here. Mr. Lawler is not involved in a dispute with 121 Preston Corporation. If such a dispute were before this Court, one might obtain a different result, because the rule of *Berl* and *McAlister* elevates the interests of a shareholder above the interests of the corporation with respect to specific assets. The case at bar, however, does not concern a dispute between a shareholder and the corporation; rather, it concerns a dispute between a shareholder and a creditor of the corporation. Second, as *Berl* plainly states, any equitable interests in specific assets claimed by shareholders are subordinate to the claims of the corporation's creditors. The shareholder's interest in the assets of the corporation is, at best, indirect or collateral; it does not invest the shareholder with any right arising to the dignity of legal or equitable title. *Pacific Fire Insurance Company v. John E. Morris Company,* 12 S.W.2d 971 (Tex.Comm.App.

1929). Where, as here, the dispute concerns possibly conflicting claims of a creditor and the shareholder of a corporate entity which is not itself a debtor in bankruptcy, the claims of the creditor clearly prevail. Of course, Mr. Lawler's interest in the shares of stock fall within the scope of the stay. His interests in specific assets of the corporation, however, are sufficiently attenuated to escape the jurisdiction of this Court. The foreclosures by Lomas & Nettleton upon land held by 121 Preston Corporation were not therefore in violation of the automatic stay, and for purposes of this action, were not invalid. While this Court has not inquired into other claims Mr. Lawler may have against Lomas & Nettleton, it is clear that the Defendant cannot be regarded as a trespasser, and thus the ten year statute of limitations applicable to actions to try title does not control the present complaint. Accordingly, Mr. Lawler's claim was untimely, and will be denied. The Motion to Dismiss filed by Lomas & Nettleton herein is well taken, and is hereby granted, and the complaint is dismissed.