**In re Robert MASS and Yvonne J. Mass, Debtors.**

**Robert MASS and Yvonne J. Mass, Plaintiffs,**

**v.**

**BELL ATLANTIC TRICON LEASING CORP. and First Eastern Bank, Defendants.**

Bankruptcy No. 5–91–00898.
Adv. No. 5–92–0106.

United States Bankruptcy Court,
M.D. Pennsylvania,
Wilkes–Barre Division.

March 14, 1994.

Joseph Murray, Stroudsburg, PA, for debtors Robert Mass and Yvonne J. Mass.

Stephen W. Edwards, Philadelphia, PA, for Bell Atlantic Tricon Leasing Corp.

Elizabeth Bensinger Weekes, Stroudsburg, PA, for First Eastern Bank.

George Clark, Scranton, PA, Trustee.

## *OPINION AND ORDER*

JOHN J. THOMAS, Bankruptcy Judge.

The Debtors, Robert Mass and Yvonne J. Mass, (hereinafter "Plaintiffs"), commenced this action against Bell Atlantic Tricon Leasing Corp. and First Eastern Bank, (hereinafter "Defendant" and "Bank", respectively), requesting this Court to order the Defendant and Bank to turnover to the Plaintiffs property of the estate consisting of an account at the Bank which was garnished by the Defendant subsequent to the filing of the Plaintiffs' Chapter Eleven bankruptcy proceeding. The case was originally filed under Chapter Eleven of the Bankruptcy Code but subsequently converted to a case under Chapter Seven. The Trustee, George Clark, Esquire, has joined in both the Complaint and the Brief in Support of the Plaintiffs. For the

reasons provided herein, the Complaint is granted and judgment is entered in favor of the Plaintiffs.

The facts are as follows. On or about June 7, 1991, Plaintiffs filed a Chapter Eleven bankruptcy case in the United States Bankruptcy Court for the Middle District of Pennsylvania. Both prior to and subsequent to the filing, the Plaintiffs operated a business known as Mountain Cleaners, Inc. The checking account of the business was titled "Mountain Cleaners, Inc." prior to the bankruptcy. Shortly after the filing of the bankruptcy, the Plaintiffs caused to be added to the title of the bank account the description "Debtor–In–Possession" making the full title of the account "Mountain Cleaners, Inc. Debtor–In–Possession". Thereafter, on July 16, 1992, Defendant garnished the account which at the time contained approximately Four Thousand Dollars ($4,000.00). On November 6, 1992, the Department of the Treasury, Internal Revenue Service, (hereinafter "IRS"), levied on the Mountain Cleaners, Inc. account by Notice of Levy dated November 6, 1992. The Notice of Levy was directed to the First Eastern Bank identifying the address of the taxpayer as Mountain Cleaners, Inc., Route 940, Mount Pocono, Pennsylvania 18344.

The controversy began with the signing of a lease between the Defendant and Mountain Cleaners, Inc. The lease reflects that the lessee's name is Mountain Cleaners, Inc. and the authorized signature on the lease is of Robert Mass with the title of President. After a failure to complete the payments under the lease, the Defendant secured a judgment against Mountain Cleaners, Inc. on February 27, 1992 in the total amount of Four Thousand Six Hundred Eighty and 43/100 Dollars ($4,680.43). Thereafter, the judgment entered by the Superior Court of New Jersey, Law Division, Bergen County, was transferred pursuant to Rule 236 of the Supreme Court of Pennsylvania to the Pennsylvania Court of Common Pleas, Monroe County, Pennsylvania. Thereafter, a judgment for garnishment was entered against First Eastern Bank in the total amount of Four Thousand Three Hundred Seventy and 50/100 Dollars ($4,370.50).

While the Plaintiffs admit that Mountain Cleaners, Inc. was incorporated, the male Debtor testified that stock certificates were never issued nor did he ever attend a director's meeting or a shareholder's meeting. See *Transcript, Dec. 3, 1992 at pgs. 6 and 7.* Subsequent to the filing of the bankruptcy, the Plaintiffs changed the name on the bank account by adding the designation "Debtor–In–Possession". See *Transcript, Dec. 3, 1992 at pg. 7.* This was done because Mountain Cleaners was being sued by the landlord. See *Transcript, Dec. 3, 1992 at pgs. 7 and 8.* All of the monies deposited in the account were generated from the dry cleaning business. See *Transcript, Dec. 3, 1992 at pg. 8.* The account was used to pay the business expenses of the business and the Plaintiffs' personal expenses. See *Transcript, Dec. 3, 1992 at pg. 8.*

On cross-examination, the male Debtor indicated that the business was incorporated approximately October 9, 1990. See *Transcript, Dec. 3, 1992 at pg. 21.* He further indicated that the sign outside the business reads "Mountain Cleaners" and that the name on receipts given to customers also reflects the name "Mountain Cleaners" and that the only account ever used by Mountain Cleaners or Mountain Cleaners, Inc. was the bank account that is in question. See *Transcript, Dec. 3, 1992 at pg. 22.* The business has a vehicle which has a logo painted on it with the title Mountain Cleaners. See *Transcript, Dec. 3, 1992 at pgs. 31 and 32.* Furthermore, the lease agreement for the equipment subject to the judgment leading to the garnishment bears the name Mountain Cleaners, Inc. and that the signature appearing thereon was of the male Debtor and next to it was the word President. See *Transcript, Dec. 3, 1992 at pgs. 23 and 24.* The cross-examination further reflects that the Plaintiffs, in addition to the expenses of the business, paid all of their personal debts from the Mountain Cleaners, Inc. account including debts for telephone and mortgage payments on their individual residence at 35 Scott Run. See *Transcript, Dec. 3, 1992 at pgs. 27 and 28.* Mountain Cleaners, Inc. was never in bankruptcy and has never filed for

bankruptcy. See *Transcript, Dec. 3, 1992 at pg. 31.*

Further, on re-direct examination, the male Debtor indicated that he signed the lease with the Defendant as a personal guarantee on the debt. See *Transcript, Dec. 3, 1992 at pg. 38.*

It is on the basis of the above facts that the Plaintiffs argue that the account subject to the garnishment was, in fact, an asset of the Debtors' estate subject to a Complaint for Turnover. The Plaintiffs actually make an argument contrary to those traditionally made in situations where a creditor is attempting to pierce the corporate veil of a corporation in order to get to the assets of the individual shareholders or directors. In fact, the Plaintiffs request the Court to permit a "reverse piercing" of the corporate veil which would lead this Court to make a finding that the corporation was actually a sham or veil and that at all times the individuals ignored or disregarded corporate formalities.

The Defendant responds by arguing that the corporation had an existence separate and apart from the individual Debtors and that this existence is evidenced by the incorporation of the corporation in the records of the state and as to how the corporation presented itself to its creditors and customers namely, the signing of the lease by the corporation with the individual male Debtor signing as President and personally guaranteeing that debt, and the indication of the corporate existence on the sign on the building, the receipts given to customers, and the logo on the side of the vehicle used on behalf of the business. The Defendant also argues that there is a corporation by estoppel and that the Plaintiffs should not be permitted to deny the existence of the corporation while asserting a personal claim to the corporate accounts superior to that of the corporation's bona fide corporate creditors.

### DISCUSSION

The Plaintiffs brought the instant action under Section 542 (Turnover of Property to the Estate) which provides as follows at subsection (a):

(a) Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

The provisions of subsection (c) or (d) are not applicable in this case and are omitted and not incorporated in this decision.

■ The initial issue for resolution is the standing of the Trustee who has joined in the action filed by the Plaintiffs. 11 U.S.C. § 541 creates an entity known as the bankruptcy estate which entity is distinct and separate from the Trustee. Section 323 of the Code authorizes the Trustee, as representative of the estate, to bring actions on behalf of the estate.

"... As was the case under the Bankruptcy Act, the trustee's standing to sue under the Bankruptcy Code extends to two distinct classes of claims arising out of prepetition occurrences: (1) causes of action belonging to the debtor upon commencement of the case; and (2) claims falling within the trustee's special avoiding powers.

The first class becomes part of the estate pursuant to section 541. Section 541(a)(1) provides that the estate includes 'all legal or equitable interests of the debtor in property as of the commencement of the case.' Since causes of action are property, this subsection by its terms extends to the debtor's pre-bankruptcy claims against third parties. Further, the legislative history makes clear that Congress intended subsection (a)(1) to include the debtor's pre-bankruptcy claims. Thus, section 541(a)(1), like its analogous provision under the Bankruptcy Act, brings into the estate all claims which the debtor could have brought against third parties outside of bankruptcy." [Footnotes omitted] Mark L. Prager and Jonathan A. Backman, *Pursuing Alter–Ego Liability Against Non– Bankrupt Third Parties: Structuring a*

*Comprehensive Conceptual Framework,* 35 St. Louis U.L.J. 657 (1991).

The Court is not unaware of the possibly perceived inequities of permitting the Trustee to step into the shoes of an inherited cause of action which might have been spawned by the Debtors' wrongdoings or failures to follow the prerequisites of corporate law. This issue has been addressed by at least two (2) other bankruptcy courts and the Court directs the parties' attention to the case of *In re Schuster,* 132 B.R. 604 (Bkrtcy. D.Minn.1991) *at page 609, footnote 6* in where we find the following:

> At first glance, it seems paradoxical that the Trustee accedes to the remedy as a successor to a shareholder, but that he is allowed to use his predecessor's alleged failings and/or wrongdoings to support his invocation of the remedy. There is nothing inherently wrong with this, though. The Trustee is under a fiduciary duty to maximize the estate's recovery, and the return to the beneficiaries of his trust. *In re Rigden,* 795 F.2d 727, 730 (9th Cir. 1986).
> He is to be an active agent on behalf of the interests of all claimants against the estate. *Imperial Assur. Co. v. Livingston,* 49 F.2d 745, 748 (8th Cir.1931). As a result, he must pursue the remedy at issue here. The fact that the Trustee may exploit a shareholder's standing on a derivative basis, while complaining of that same shareholder's past actions as part of his case on the merits, does not bar the estate from seeking that relief. The Bankruptcy Code recognized the estate's freedom to pursue its remedies, unfettered by the knowledge and past acts of it debtor-predecessor, in many ways; the "strongarm" provision of 11 U.S.C. § 544(a), which gives the trustee various transfer-avoidance powers under nonbankruptcy law "without regard to any knowledge of the trustee or of any creditor," is only the most salient example.

See also *In re Richels (Smith v. Richels, et al.),* 163 B.R. 760 (Bkrtcy.E.D.Va.1994).

▮ The Court will now address the issue of whether or not the account subject to the Complaint is an "asset" of the estate. To answer that question, the Court must look to the facts as presented in the evidence and determine whether or not the Trustee's "reverse piercing" theory has been supported. If the Trustee has made out a case to reverse the piercing of the corporate veil, then the Court's decision would be that the account is an asset of the estate. The factors this Court will look to in order to determine whether the corporate veil can be pierced are the following:

1. Failure to observe corporate formalities;

2. Non-payment of dividends;

3. Insolvency of the debtor corporation;

4. Siphoning off funds of the corporation by the dominant shareholder;

5. Non-functioning of other officers or directors;

6. Absence of corporate records;

7. The fact that the corporation is merely a facade for operations of the dominant stockholder or stockholders; and

8. Gross undercapitalization of the corporation.

*B.D.W. Associates, Inc. v. Busy Beaver Building Centers, Inc.,* 865 F.2d 65 (3rd Cir.1989) *citing American Bell, Inc. v. Federation of Telephone Workers,* 736 F.2d 879 (3rd Cir.1984).

As already indicated, this is not a traditional piercing of the corporate veil by a creditor or a Trustee to get to the assets of the individual shareholders. In this case, we have the Trustee, representing the estate, taking the position of the incorporators, the individual Debtors, requesting that the corporate entity be disregarded and that the account be brought back into the estate to satisfy the debts of the individual Debtors. The doctrine or application of reverse piercing is amply set forth in the case of *In re Schuster, supra, at page 607* as follows:

> Rather, they seek a "reverse piercing" of the corporate veil. In a "reverse piercing," the corporate entity is disregarded at the behest of insiders of the corporation, toward the end that rights or benefits inuring to the insiders under contract or stat-

ute are impressed onto the assets of the corporation:

> In a reverse pierce ..., the corporate entity [is] set aside so protections that are available to noncorporate entities or individuals would be available to the shareholder [sic] to avoid an injustice. [Citations omitted]

We turn once again to the facts of this case. The testimony is uncontradicted that subsequent to the incorporation of Mountain Cleaners, Inc., there was a total failure to observe any corporate formalities by the corporation and the Debtors. There were no directors' or shareholders' meetings and there were no dividends paid. There are no corporate records and, while the Court cannot find that there was a siphoning off of funds from the corporation by the dominant shareholder, the Court can find that the Debtors at all times used the proceeds from the business as if those proceeds were the assets of the individual Debtors and not those of a separate corporation. Other than the signing of the lease between the corporation and the maintaining of an account titled "Mountain Cleaners, Inc." at the bank, there is no evidence presented to compel this Court to find that the corporation was other than a sham or facade for the individual Debtors. The Defendant stressed several times in its supporting documentation and in its presentation of testimony that as to the general public the Debtors held out Mountain Cleaners, Inc. as a separate corporation. The evidence reveals, however, that as to the general public there was a "Mountain Cleaners" as that name appeared on the building, on receipts and on the vehicle used in the operation of the business. The fact that there was a corporation, however, was not made apparent to the public. The Court further cannot find that there was any intentional scheme or fraud committed by the individual Debtors on any creditor of this estate. They, at all times, used the proceeds of the account in question as their own individual account to pay off their personal debts including those debts associated with the business. The addition of the designation, "Debtor–In–Possession", to the title of the account is consistent with Plaintiff's position.

Nothing in the record indicates that the Defendant put reliance on the existence of a separate corporate entity when determining whether or not it should enter into the lease with the Debtors in this case.

For all the foregoing reasons, the Court finds that the Trustee has standing to bring the instant action pursuant to his duties as provided in Section 323 and Section 542 of the Bankruptcy Code. The Court has determined that the Trustee has met his burden to conduct a reverse piercing of the corporate veil and has determined that Mountain Cleaners, Inc. was nothing more than a sham or alter ego of the individual Debtors. The proceeds of the account are assets of the estate subject to turnover under 11 U.S.C. § 542(a) to the Trustee.

■ As indicated earlier, the Internal Revenue Service has, by a Notice of Levy dated November 6, 1992, levied the Debtors' account in the possession of First Eastern Bank. The IRS should not receive preferential treatment over all other creditors of the estate. In addition to ordering the First Eastern Bank to turnover the proceeds of the account to the Chapter Seven Trustee, George Clark, Esquire, the Court will void both the levy on the account by the IRS and the garnishment of the account by the Defendant as post-petition attempts to encumber property of the estate. *Raymark Industries, Inc. v. Lai,* 973 F.2d 1125 (3rd Cir.1992).

An appropriate Order will follow.

### *ORDER*

AND NOW, this 14th day of March, 1994, **IT IS HEREBY**

**ORDERED** that the Complaint of the Debtors, Robert Mass and Yvonne J. Mass, seeking a turnover of funds under Section 542(a) of the United States Bankruptcy Code is hereby granted; **AND IT IS FURTHER**

**ORDERED** that the First Eastern Bank shall transfer the proceeds of the bank account in the name of Mountain Cleaners, Inc., Debtor–In–Possession, to the Trustee, George Clark, Esquire; **AND IT IS FURTHER**

**ORDERED** that the garnishment of the above-referenced account by Bell Atlantic Tricon Leasing Corporation is hereby voided; **AND IT IS FURTHER**

**ORDERED** that the Notice of Levy by the Department of the Treasury, Internal Revenue Service, dated November 6, 1992, of the Mountain Cleaners, Inc. account in the possession of First Eastern Bank is hereby voided.