In re Robert MASS and Yvonne
J. Mass, Debtors.

Robert MASS and Yvonne
J. Mass, Plaintiffs,

v.

BELL ATLANTIC TRICON LEASING
CORP. and First Eastern Bank,
Defendants.

No. 94–CV–0623.

United States District Court,
M.D. Pennsylvania.

Feb. 21, 1995.

Joseph G. Murray, Stroudsburg, PA, for plaintiffs Robert Mass and Yvonne J. Mass.

Stephen W. Edwards, Dolchin, Slotkin & Todd, P.C., Philadelphia, PA, for defendant Bell Atlantic Tricon Leasing Corp.

Elizabeth Bensinger Weekes, Beinsinger, Flynn & Weekes, Stroudsburg, PA, for defendant First Eastern Bank.

George E. Clark, Jr., Trustee, Nogi, Appleton, Weinberger & Wren, Scranton, PA.

### MEMORANDUM

VANASKIE, District Judge.

This is an appeal by Bell Atlantic Tricon Leasing ("Bell Atlantic") from the United States Bankruptcy Court's Opinion and Order dated March 14, 1994, 166 B.R. 595, which determined that funds in the account of Mountain Cleaners, Inc. were actually the assets of the individual debtors, Robert Mass and Yvonne J. Mass (hereinafter collectively referred to as "Mass"). Bell Atlantic con-tends that the Bankruptcy Court improperly voided the judgment lien and garnishment which it held against the Mountain Cleaners, Inc. account.

The Bankruptcy Court concluded that a "reverse" piercing of the corporate veil was appropriate so that the account balance could be made available to all creditors of Mass. In a "reverse" piercing, assets of the corporate entity are used to satisfy the debts of a corporate insider so that the corporate entity and the individual will be considered one and the same. 1 WILLIAM M. FLETCHER, FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 41.70 (perm. ed. rev. vol. 1990); *In re Schuster,* 132 B.R. 604, 607 (Bankr. D.Minn.1991).

A careful review of the record in this case discloses the exceptional circumstances that warrant the unusual "reverse" piercing of the corporate veil authorized by the Bankruptcy Court's Order. It also appears that the funds held in the corporate checking account constituted property of the debtors, thus supporting a grant of relief in favor of Mass on the Complaint seeking a turnover of funds under § 542(a) of the United States Bankruptcy Code, 11 U.S.C. § 542(a). Accordingly, the Bankruptcy Court Order of March 14, 1994 will be affirmed.

### BACKGROUND

Robert and Yvonne Mass operated a dry cleaning business under the name "Mountain Cleaners." On or about October 9, 1990, Mass caused to be incorporated a corporation bearing the name "Mountain Cleaners, Inc." A personal business checking account was changed to a corporate account on October 9, 1990. (*See* Ex. 4 to the Brief of Appellant (Dkt. Entry 4).)

At no time, however, did Mass observe the formalities of corporate existence. Even after the incorporation of Mountain Cleaners, Inc., Mass conducted the dry cleaning business as if it were unincorporated. For example, the commercial lease for the business premises was entered into by Robert Mass, not Mountain Cleaners, Inc. The checking account in the name of "Mountain Cleaners, Inc." was used not only for business pur-

poses, but also for all personal expenses. Moreover, stock certificates for Mountain Cleaners, Inc. were never issued, nor was a shareholders' or directors' meeting ever conducted. While Mass transferred a pre-existing personal checking account to a corporate account, the only action the corporation appears to have taken was the execution of an equipment lease with Bell Atlantic in January 3, 1991. This lease, signed by Robert Mass in his capacity as "President" of Mountain Cleaners, Inc., was also executed in his individual capacity as guarantor.

On June 7, 1991, Mass filed a Chapter 11 bankruptcy case in the United States Bankruptcy Court for the Middle District of Pennsylvania.[1] Mountain Cleaners, Inc., however, did not file a bankruptcy case. Subsequent to the Chapter 11 filing, Mass continued to operate the Mountain Cleaners dry cleaning business. On or about June 13, 1991, the First Eastern Bank records for the checking account held in the name of "Mountain Cleaners, Inc." were changed to include the designation of "Debtor in Possession." All funds of the debtors-in-possession generated in the dry cleaning business were thereafter deposited in the Mountain Cleaners, Inc. account.

Indeed, the debtors maintained no other bank accounts, personal or business, during the bankruptcy case. The account in question was used to pay both business and personal expenses, including personal telephone bills and mortgage payments on the Mass residence.

On February 27, 1992, after Mass failed to complete payment under the Bell Atlantic equipment lease, Bell Atlantic secured a judgment against Mountain Cleaners, Inc. in the amount of $4,680.43. On July 16, 1992, Bell Atlantic garnished the account in question, which at that time contained approximately $4,000.[2]

On August 3, 1992, Mass filed a "Complaint for Turnover." The Complaint alleged, *inter alia,* that the monies in the account were assets of the bankruptcy estate under 11 U.S.C. § 541 and that the Bankruptcy Court had the authority under § 542(a) to require the turnover of the property of the estate in the possession of another. The Trustee joined in the Complaint for Turnover.[3]

An evidentiary hearing was conducted on December 3, 1992. The Bankruptcy Court issued its Opinion and Order on March 14, 1994, directing First Eastern Bank to transfer the proceeds of the account in the name of "Mountain Cleaners, Inc., Debtor-in-Possession," to the Trustee. On April 7, 1994, the Bankruptcy Court stayed its order pending the outcome of Bell Atlantic's appeal.

Bell Atlantic filed its brief in support of its appeal on May 16, 1994. A brief was filed on behalf of Mass on July 5, 1994. This matter is ripe for disposition.

## DISCUSSION

■ A Bankruptcy Court's factual findings are reviewed under a clearly erroneous standard. *In re Siciliano,* 13 F.3d 748, 750 (3rd Cir.1994). In this case, the facts are undisputed. Bell Atlantic contests the legal conclusions drawn by the Bankruptcy Court from the uncontested facts. The Bankruptcy Court's conclusion that a "reverse" piercing of the corporate veil is warranted by the evidence is subject to plenary review. *Id.*

■ Generally, the corporate entity should be upheld "unless specific, unusual circumstances call for an exception." *Zubik v. Zubik,* 384 F.2d 267, 271–73 (3rd Cir.1967), *cert. denied,* 390 U.S. 988, 88 S.Ct. 1183, 19 L.Ed.2d 1291 (1968). Piercing the corporate veil is the exception to the general rule and requires an allegation that the corporation was a sham or alter ego of the officer/di-

1. The case was subsequently converted to a case under Chapter 7 of the Bankruptcy Code, and George Clark was appointed as the Trustee.

2. On November 6, 1992, the United States Department of the Treasury, Internal Revenue Service, levied on the Mountain Cleaners, Inc. account. The levy was voided by the Bankruptcy

Court's Order of March 14, 1994, and the IRS has not appealed the Bankruptcy Court's ruling.

3. Under section 323 of the Bankruptcy Code, the Trustee, as a representative of the bankruptcy estate created under 11 U.S.C. § 541, may bring actions on behalf of the estate.

rector. *Pell v. Weinstein,* 759 F.Supp. 1107, 1116 (M.D.Pa.1991), *aff'd mem.,* 961 F.2d 1568 (3rd Cir.1992). As the Bankruptcy Court observed, the factors that are to be considered to determine whether the corporate veil should be pierced under the alter ego theory include: failure to observe corporate formalities; non-payment of dividends; insolvency of the corporation; siphoning of corporate funds by the dominant shareholder; non-functioning of other officers or directors; absence of corporate records; and gross undercapitalization of the corporation. *Kaplan v. First Options of Chicago Inc.,* 19 F.3d 1503, 1521 (3rd Cir.1994); *Jiffy Lube Int'l Inc. v. Jiffy Lube of Pennsylvania, Inc.,* 848 F.Supp. 569 (E.D.Pa.1994); *Wheeling–Pittsburgh Steel Corp. v. Intersteel, Inc.,* 758 F.Supp. 1054, 1059 (W.D.Pa.1990); *Galgay v. Gangloff,* 677 F.Supp. 295 (M.D.Pa.1987), *aff'd mem.,* 932 F.2d 959 (3rd Cir.1991). More generally, a court may use its equitable powers to disregard the corporate entity "if it appears that piercing the corporate veil will prevent fraud, illegality, injustice, [or] a contravention of public policy...." *Zubik,* 384 F.2d at 272; *Trans Pacific Ins. Co. v. Trans–Pacific Ins. Co.,* 136 F.R.D. 385, 387 (E.D.Pa.1991); *Manville Sales Corp. v. Paramount Systems, Inc.,* 917 F.2d 544, 552 (Fed.Cir.1990). Because piercing the corporate veil is an equitable remedy, the court may "disregard the legal fiction of corporate existence, to facilitate an according of relief or an adjudication of rights which is in line with the general dictates of equity...." *Schuster,* 132 B.R. at 609. Pennsylvania courts have found that a "defendant need not assert that the corporation is being used to perpetrate fraud or a crime, the corporate veil can still be pierced under appropriate circumstances where defendant alleges that it is necessary to avoid injustice." *Fort Washington Resources, Inc. v. Tannen,* 153 F.R.D. 565, 567 (E.D.Pa.1994); *Village at Camelback Property Owners Ass'n Inc. v. Carr,* 371 Pa.Super. 452, 461, 538 A.2d 528, 533 (1988), *aff'd,* 524 Pa. 330, 572 A.2d 1 (1990); *Rinck v. Rinck,* 363 Pa.Super. 593, 597, 526 A.2d 1221, 1223 (1987).

 This, however, is not a traditional piercing of the corporate veil case, in which a creditor or Trustee pierces the corporate veil to reach through the corporation to reach the assets of the individual shareholders. Instead, the court is faced with a "reverse" piercing. The Trustee, representing the estate, is taking the position of the individual debtors/shareholders, Mass, requesting that the corporate entity be disregarded and the account be brought into the estate to satisfy the debts of the individual debtors.

In other words, in this action the court is asked to apply the doctrine of "reverse" piercing in what the *Schuster* court deemed "a novel wrinkle on the doctrine.... Plaintiffs urge that [the doctrine of reverse piercing] be applied to disregard the corporate entity in order to make a corporation's assets liable for the debts of one of its individual principals." *Id.*

In *Schuster,* the Trustee brought adversary proceedings seeking "reverse" piercing of the veil of debtor's family corporation. The court found that the Trustee had standing to bring such an action so as to subject corporate assets to creditors' claims which were allowed in the Chapter 7 case, based on the estate's 50% shareholding in the family corporation.[4]

In the action at bar, the Trustee is asking the court to disregard the corporate entity, Mountain Cleaners, Inc., and make the corporate assets, specifically the bank account, available to satisfy the debts of Mass. This is exactly what the *Schuster* Plaintiffs advocated. *Id.*

In reaching its decision, the *Schuster* court asked "whether the dictates of equity, any recognized public policy, or any express statutory goal would be served by disregarding the corporate form in favor of a trustee in bankruptcy situated like the one here." *Id.* at 611. To answer this question the *Schuster* court looked at the balance between debtor's and creditor's remedies which the bankruptcy system is intended to serve. The debtor receives the equitable remedy of discharge

4. Because the Trustee's duty is to maximize the estate's recovery, the Trustee may seek the requested relief for the benefit of the estate.

and the creditor the remedy of receiving a *pro rata* share of the value which the Code dictates must be available to creditors after the debtor's "fresh start." The court found that securing the assets of the debtors' corporation for the benefit of *all* creditors was sufficiently in the public interest and within the dictates of equity to warrant "reverse" piercing.

Consideration of these factors does indeed warrant a reverse piercing of the corporate veil here. In this case, there was a total failure to observe any corporate formalities by the debtors; there were no directors' or shareholders' meetings and no dividends were paid; there are no corporate records; no corporate tax records were maintained; the business premises were not leased to the corporation; and at no time was the dry cleaning business conducted as a corporate entity. At all times the debtors used the proceeds of the business as if they were the assets of the individual debtors themselves. Furthermore, the Bankruptcy Court found that the debtors did not intend to scheme or defraud any of the estate's creditors, a finding not contested by Bell Atlantic. (Opinion and Order of Bankruptcy Court, March 14, 1994, 166 B.R. at 600.)

Bell Atlantic argues that use of the name "Mountain Cleaners" on the business vehicle, signs and receipts indicated that the corporate entity was operating the dry cleaning business. (Brief of Appellant (Dkt. Entry 4) at 6.) As the Bankruptcy Court noted, however, the business vehicle, signs and receipts did not indicate "Mountain Cleaners" was a corporation.

Bell Atlantic also argues that *Schuster*, on which the Bankruptcy Court principally relied, is inconsistent with Pennsylvania law concerning piercing the corporate veil. Specifically, Bell Atlantic contends that "[t]here are no Pennsylvania or Federal cases [applying Pennsylvania law] compelling or allowing corporate assets to be made available to shareholders or their creditors on a piercing the corporate veil theory." (Brief of Appellant (Dkt. Entry 4) at 2.)

Bell Atlantic, however, has not cited any case applying Pennsylvania law that rejects "reverse" piercing of the corporate veil.

*Schuster* is premised on the equitable purposes served by the piercing the corporate veil doctrine—"to prevent the triumph of defective legal form over a substance, which in the view of the court, otherwise merits redress." 132 B.R. at 607. The Pennsylvania courts have recognized that piercing the corporate veil is not limited "to situations were such is necessary to prevent a fraud." *Village at Camelback Property Owners Ass'n v. Carr, supra,* 538 A.2d at 533. Instead, the corporate entity " 'will be disregarded whenever justice or public policy require and where rights of innocent parties are not prejudiced....' " *Id.* As explained in *In re Richels,* 163 B.R. 760, 763 (Bankr.E.D.Va. 1994), in recognizing reverse piercing of the corporate veil under Virginia law, " '[j]urisprudential pragmatism prevents the exaltation of legalities to a sacrosanct status in disregard of realities.' " *Id.* at 763. I thus find that reverse piercing of the corporate veil, as recognized in *Schuster,* is consistent with Pennsylvania law. *See also, In re Elkay Industries, Inc.,* 167 B.R. 404 (D.S.C. 1994) (adopting the well-reasoned opinion of *Schuster* and recognizing reverse piercing of the corporate veil under South Carolina law).

Bell Atlantic argues that *Schuster* is distinguishable because it involved creditors of a corporation's shareholder. Contrary to Bell Atlantic's assertion, the court in *Schuster* held that creditors of a Chapter 7 debtor had no right to invoke the doctrine of reverse piercing of the corporate veil. Instead, *Schuster* recognized the right of a Trustee to employ "reverse" piercing in order to gather assets that rightfully belong in the debtors' estate.

Bell Atlantic contends that piercing the corporate veil in this case is inappropriate because it is an "innocent" third party harmed by transferring the accounts funds to the debtors' estate. As Mass argues, however, the Bankruptcy Court order in this case aids *all* creditors of the bankruptcy estate, which include Bell Atlantic. In essence, Bell Atlantic is placed on the same footing as all other creditors of Mass. In other words, Bell Atlantic should not enjoy a preferential

treatment as the only business creditor to have contracted with a sham corporation.[5]

Bell Atlantic's reliance upon *In re Lawler*, 50 B.R. 110 (Bankr.N.D.Tex.1985), is misplaced. First, the individual debtor in *Lawler* owned only 50% of the shares of the corporation at issue, *i.e.*, he did not control the corporation. Second, there was no indication that corporate formalities had been ignored, standard accounting practices disregarded, undercapitalization of the corporation or "any other signposts of abuse of the corporate form...." *Id.* at 117. Third, the Bankruptcy Court had concluded that the debtor had "obtained benefits not otherwise available to him by virtue of the incorporation." *Id.* No such showing has been made here. Finally, the court in *Lawler* intimated that fraud was required in order to invoke the alter ego doctrine. *Id.* As noted above, Pennsylvania law does not require a showing of fraud to warrant piercing the corporate veil.

Finally, contrary to Bell Atlantic's assertion, the Bankruptcy Court Order does not perpetuate a fraud. It is undisputed that the account at issue served as the *exclusive* "debtor-in-possession" account. It therefore follows that "it was *estate* funds, not 'corporate' funds, that were placed in the account." (Brief of Appellees (Dkt. Entry 11) at 8.) Bell Atlantic did not garnish the account in question until well after it had been designated as the exclusive "debtor-in-possession" account. The Bankruptcy Court ruling recognizes that the funds in the account were actually property of the bankruptcy estate, which "may be ordered turned over to the estate pursuant to § 542 of the Bankruptcy Code." *In re Leadbetter*, 111 B.R. 640, 641 (Bankr.N.D.Ohio 1990).

### CONCLUSION

The Trustee has standing to use "reverse" piercing of the corporate veil to bring the proceeds of the account of "Mountain Cleaners, Inc. Debtors in Possession" into the estate, subject to turnover to the Trustee under 11 U.S.C. § 542(a). In this instance, "reverse" piercing and the subsequent turnover of the assets is equitable and serves public policy by placing all of the assets in the same pot and all creditors on equal footing.

An appropriate Order is attached.

### ORDER

**NOW, THIS 21st DAY OF FEBRUARY, 1995,** in accordance with the accompanying Memorandum, **IT IS HEREBY ORDERED:**

1. Bell Atlantic Tricon Leasing's appeal from the Bankruptcy Court's decision is **DENIED.**

2. The ruling of the Bankruptcy Court is affirmed.

3. The Clerk of Court is directed to close this case and forward the file to the United States Bankruptcy Court for the Middle District of Pennsylvania.

5. The Bankruptcy Court observed that "[n]othing in the record indicates that [Bell Atlantic] put reliance on the existence of a separate corporate entity when determining whether or not it should enter into the lease with the debtors in this case." (Bankruptcy Court Opinion at 9.) Bell Atlantic now asserts that the corporation had significance to it because it relied "on the corporation's financial rating and on corporate assets being available to satisfy any default...." (Brief of Appellant (Dkt. Entry 4) at 7.) Bell Atlantic, however, fails to point to any evidence of a "financial rating" or the existence of "corporate assets." In this case, the only "corporate asset" appears to have been the checking account bearing the designation "Debtors' in Possession." Moreover, Bell Atlantic's assertion of reliance on the corporate form is belied by its obtaining the personal guarantee of Robert Mass.